KLEIN ET AL., APPELLEES, *v.* GARRISON, APPELLANT.

(No. 2148—Decided December 10, 1951.)

*Mr. Merritt S. Schlafran,* for appellees.
*Mr. Otterbein Creager,* for appellant.

WISEMAN, J. This is an appeal on questions of law from a judgment of the Municipal Court of Dayton in an action for damages for trespass on real property by the removal of topsoil. The cause was tried to the court without the intervention of a jury. The court rendered a general finding in favor of the plaintiffs and assessed damages in the amount of $100, on which finding judgment was rendered.

The defendant-appellant claims that the court erred in finding the defendant guilty of trespass; that the court erred in computing damages without reference to the evidence; and that the court applied the wrong rule as to the measure of damages.

The defendant subdivided farm land into building lots. The plaintiffs purchased a lot in the early part of 1947 and, in January 1948, purchased another lot adjacent to the lot first purchased. At the time the second purchase was made the plaintiffs went upon

the property and learned that the defendant had used a scoop or bulldozer in grading the subdivision and, in doing so, had removed the topsoil from a portion of the lot first purchased. The evidence supports the contention of plaintiffs that approximately 300 cubic yards of soil was removed; that the lot was higher in the rear than at the front; and that the rear of the lot is where the deepest cut was made, which changed the grade of the lot. The testimony clearly shows that the removal of the topsoil was accomplished without the knowledge or consent of the plaintiffs.

We are of the opinion that the evidence supports the finding of the trial court that a trespass was committed. The defendant cannot avoid the consequences of a trespass on the theory that the lot in question and the subdivision required grading, and that the lot of the plaintiffs after the soil had been removed was in a smoother condition than it was before the removal. There was no evidence presented from which the court could conclude that the defendant was permitted to enter upon the lot after it was purchased by the plaintiffs for the purpose of grading or removal of any part of the soil.

The principal question for determination involves the measure of damages. The evidence is in conflict on the amount of soil removed and its fertility. The plaintiffs introduced evidence to the effect that the lot was of less value after the soil had been removed, and the defendant introduced evidence to the effect that for building purposes the lot was of greater value after the soil had been removed. There was no testimony presented showing the true market value of the lot before and after the soil had been removed or the difference in value before and after. The only testimony presented of a tangible character related to the cost of replacement of the topsoil. There was a variation in the cost of topsoil ranging from $1.40 to

$2 a cubic yard, delivered on the lot. By a mathematical calculation based on the evidence that 300 cubic yards had been removed, the cost of replacement would have ranged from $420 to $600, the latter being the amount claimed by the plaintiffs as their damage. The court rendered judgment in the amount of $100.

The defendant contends, first, that the court failed to apply the correct rule in awarding damages, and, second, that the court computed damages without reference to the evidence. These two contentions revolve around the application of the true measure of damages in an action of trespass for the removal of soil. The law in this respect is not well settled in Ohio. For a discussion of this subject reference is made to 13 Ohio Jurisprudence, 124 *et seq*. It will be found that there are different rules applied by the courts for trespass to real property, depending upon the nature of the injury and whether the injury is considered to be temporary or permanent. In the case at bar the plaintiffs contend that evidence as to the cost of restoration of the property or the cost of replacing the topsoil is sufficient under the issues to support the award of damages. The defendant contends that under the issues and facts presented in this case the true measure of damages is the difference in the market value of the plaintiff's real estate before and after the trespass was committed.

In 13 Ohio Jurisprudence, 125, Section 53, it is stated:

"The proper measure of damages for a wrongful injury to real estate which is of a *permanent or irreparable nature* is the difference in the market value of the property as a whole, including the improvements thereon, immediately before and immediately after the injury." (Emphasis ours.)

On page 126, in Section 54, *ibid.*, it is stated:

"On the question of the measure of damages for *temporary injuries* to real property there is a division of authority; one rule permits the recovery of the reasonable cost of repair and restoration, while another rule holds that the diminution of the rental value, together with any special damages that may accrue, is the proper measure of recovery." (Emphasis ours.)

The editor then discusses the various rules which have been applied in different types of cases by the courts of Ohio, also, a modification of the general rule which permits the recovery of the cost of restoration. This modification of the general rule is to the effect that the cost of restoration is a measure of damages unless "the reasonable cost of restoring the premises to their original condition exceeds the difference in value of the property before and after the injury, in which case the difference in the market value is the true measure of the plaintiff's damages, although, if the testimony shows an injury to real property to be of a *permanent or irreparable nature*, the measure of damages is the difference in the value of the property before and after the injury." *ibid.* (Emphasis ours.)

Numerous cases are cited in support of the different rules which have been applied, a few of which will be discussed later. In 25 Corpus Juris Secundum, 603, Section 84, the rule is stated as follows:

"The measure of damages for a *permanent injury* to real property is usually the fair value of the property immediately before and immediately after the injury. The recovery for a *temporary injury* to real property is measured by the loss sustained by the owner, and may include the cost of restoration if less than the difference in value, and the diminution in the value of the use and enjoyment or rental value of the property during the time the injury exists." (Emphasis ours.)

On page 616 of the same work, in Section 85 e, the measure of damages applicable to the removal of soil is stated as follows:

"The measure of damages for unlawful removal of soil, or injury thereto impairing its productive capacity, is generally held to be the diminution in the value of the land."

This same work points out that some courts have held in such cases that the real measure of damages is the value of the soil removed or the cost of restoring the land to its former condition.

In 15 American Jurisprudence, 529, Section 120, the rule with regard to the removal of earth, sand and gravel is stated as follows:

"It has frequently been held that where earth, sand or gravel is wrongfully removed from land, the owner may recover the difference between the value of the land immediately before the removal and its value immediately thereafter. According to some of the courts, however, the measure of damages is the value of the material removed, together with the expense of repairing any injury caused by its removal."

In 97 A. L. R., 830, there is an annotation on the subject of the measure of damages for wrongful removal of earth, sand or gravel from land, where the rule is stated thus:

"* * * If the injury is *permanent in character*, compensation may be made for the depreciation in value; that is, the plaintiff may recover the difference between the value of the property immediately before the trespass and its value in its damaged condition.

"* * *

"It has frequently been held that where earth, sand, or gravel is wrongfully removed from land, the owner may recover the difference between the value of the land immediately before the removal and its value immediately thereafter." (Emphasis ours.)

An investigation of the law on this question discloses that there is a lack of uniformity in the rulings of the courts in the several jurisdictions. The courts must determine in the first instance whether the injury is temporary or permanent. If the injury is permanent, the great weight of authority supports the rule that the measure of damages is the difference in the value of the property before and after the injury. In the instant case the first question for the court to consider is whether the removal of the topsoil from plaintiffs' lot was a permanent or temporary injury. It may be helpful to cite the rulings of several of the courts in other jurisdictions which applied the general rule just stated. In *Gallagher* v. *R. E. Cunniff, Inc.* (1943), 314 Mass., 7, 49 N. E. (2d), 448, a trespass for excavating gravel from plaintiff's lot was held to be a permanent injury. In *Nieman & Co.* v. *Holton & Hunkel Greenhouse Co.* (1946), 248 Wis., 324, 21 N. W. (2d), 637, an action for damages for the removal of topsoil, there was evidence as to the value of the topsoil and also as to the value of the real estate and the court applied as the correct measure of damages the difference in value of the property before and after the taking. In *Chione* v. *State* (1946), 26 Wash. (2d), 635, 175 P. (2d), 955, where damages were claimed from the state for excavating soil on plaintiff's property, the court applied the general rule and in its opinion referred to 97 A. L. R., 830; 15 American Jurisprudence, 529; 25 Corpus Juris Secundum, 603, 616, Sections 84, 85e; and 3 Sedgwick on Damages (9 Ed.), Section 923.

On the question whether the injury is permanent or temporary, it will be helpful to observe the rulings of courts in other jurisdictions.

In *Morton Salt Co.* v. *Lybrand* (Texas, 1927), 292 S. W., 264, where the defendant was charged with negligently permitting salt water to flow over plain-

tiff's land, the court held the injury to be permanent and, on page 264, said:

"Our courts have uniformly held, in cases where it is shown that, by overflow, fire, or other agency, the roots or sod of native or other perennial grasses, fruit or other trees, grape or berry vines, or the productivity of the soil are impaired or destroyed, that the injury is permanent in nature, for which the owner is entitled to recover, as damages, the difference in the market value of the land before and after the injury."

See, also, *Texas Pacific Coal & Oil Co.* v. *Taylor* (Texas, 1932), 47 S. W. (2d), 1110, where damage was caused by permitting salt water to escape from defendant's land and flow over plaintiff's land into a well, and it was held that the injury was permanent. The court, on page 1111, said that "an injury to land may be permanent, as that word is understood in law, without being perpetual."

In *Lone Star Gas Co.* v. *Hutton* (Texas, 1933), 58 S. W. (2d), 19, where plaintiff's land was injured by the laying of a pipe line diverting the natural flow of water and damages to crops on plaintiff's land ensued, it was held the injury was permanent.

In *Howell* v. *City of Dothan* (1937), 234 Ala., 158, 174 So., 624, where damages were claimed by reason of the overflow, diversion and discharge of sewage, the fifteenth paragraph of the syllabus is:

"As respects measure of damages, an injury to land which inconveniences the owner in its right and accustomed use, and requires time and expense to restore land to its former condition, is a 'permanent injury.'"

In *City of Stillwater* v. *Cundiff* (1939), 184 Okl., 375, 87 P. (2d), 947, where damages were claimed because of the drilling of wells on adjacent property causing the plaintiff's water supply to fail, it was held the injury was permanent. In the course of the opinion, at page 377, the court said that "damage to

realty is permanent when the cause of the damage cannot be abated.''

In *Applegate* v. *Platte Valley Public Power & Irrigation District* (1939), 136 Neb., 280, 285 N. W., 585, damage was claimed by reason of water seepage caused by the erection of a dam. The court, holding the injury to be permanent, defined a temporary injury as one which could be abated or discontinued at any time, either by the act of the wrongdoer or by the injured party. A permanent injury was defined as one of such character and existing under such circumstances that it would be presumed to continue indefinitely.

In all these cases the courts applied the general rule that the measure of damages is the difference in the fair market value of the property before and after the injury. For rulings to the contrary, see *State Road Dept.* v. *Bender* (Fla., 1941), 2 So. (2d), 298, where the state took building sand from plaintiff's property, and plaintiff was entitled to recover the replacement value of the material, and *Citizens National Bank* v. *Keel & Sons Co.* (1942), 378 Ill., 428, 38 N. E. (2d), 734, where topsoil was removed from plaintiff's land, and plaintiff was entitled to recover the value of such soil in its severed condition.

The court now considers the Ohio case law from which we extract a principle of law applicable to the issues and evidence in this case. We cite only six cases in chronological order.

In *City of Toledo* v. *Grasser* (1895), 12 C. C., 520, 6 C. D., 782, where injury to plaintiff's property resulted from percolating water causing plaintiff's land to sink and the foundation walls of the building to crack, requiring rebuilding, and where the evidence presented related only to the cost of restoration, a judgment for the plaintiff was reversed. The court held that evidence on the cost of restoration was inadmissible and did not convey to the jury any information up-

on the question which it was to try, "which finally was, how much less valuable was the plaintiff's property in consequence of the injuries to his building from the water that had flowed into it through this defective sewer?"

In *City of Cincinnati* v. *Wright* (1903), 2 N. P. (N. S.), 53, 14 O. D., 600 (affirmed in 74 Ohio St., 479), where plaintiff's real property was injured by the overflowing of water caused by the clogging up of a gutter, the court held that the injury was temporary in character and that evidence presented on the difference in value of the property before and after the injury was prejudicially erroneous and reversed the judgment.

In *Grief* v. *Kiewell* (1911), 18 C. C. (N. S.), 450, 33 C. D., 153, where plaintiff's real property was damaged by the willful removal of fixtures damaging the house and where evidence as to the cost of restoration was admitted, a judgment for the plaintiff was reversed on the ground that the injury was of a permanent character and that the true measure of damages was the difference in value of the real property before and after the injury. On page 452 the court said:

"The rule laid down repeatedly in this state is that where damage has been done to real property, the measure of damages is the difference in the value of the property before and immediately after the injury occurred. 12 C. C., 426; 12 C. C., 520; 12 C. C., 650."

We come now to consider one of the leading cases in Ohio on this question, *Ohio Collieries Co.* v. *Cocke* (1923), 107 Ohio St., 238, 140 N. E., 356, where plaintiff brought her action for damages against the collieries company for the improper removal of pillars, ribs, stumps and supports of coal from under her lands, it being claimed that the earth had cracked in deep fissures, and that buildings and trees on her land

had been damaged. The judgment in favor of the plaintiff was affirmed. The court, in a rather lengthy opinion, discussed the measure of damages and, in the fifth paragraph of the syllabus, said:

"* * * the owner of the surface is entitled to recover, if the injury is of a *permanent or irreparable nature*, the difference in the market value of the property as a whole, including improvements thereon, before and after the injury. If restoration can be made, the measure of damages is the reasonable cost of restoration, plus the reasonable value of the loss of the use of the property between the time of the injury and the restoration, *unless such cost of restoration exceeds the difference in the market value of the property as a whole before and after the injury, in which case the difference in the market value before and after the injury becomes the measure.*" (Emphasis ours.)

In that case there was evidence to substantiate the verdict for the plaintiff upon either theory of damages, that is, whether the injury was regarded as permanent or temporary. In the instant case evidence was adduced only on the theory that the injury was temporary and that the plaintiffs were entitled to recover the cost of restoration. There was no evidence presented on the difference in value of the property before and after the injury. Consequently, under the rule stated in the case just cited, the court in the case at bar had no evidence before it from which it could determine whether the cost of restoration exceeded the difference in value of the property before and after the injury.

In *Cleveland Electric Illuminating Co.* v. *Merryweather* (1928), 6 Ohio Law Abs., 528, the plaintiff brought an action for damages for injury to a tree, and the court held the measure of damages to be the difference in value of the real estate before and after

the injury, and that the admission of testimony of an expert as to the cost of replacing the tree constituted reversible error.

In *Northwestern Ohio Natural Gas Co.* v. *First Congregational Church of Toledo* (1933), 126 Ohio St., 140, 184 N. E., 512, where damage was caused to two church structures by a gas explosion, the smaller of the two buildings being practically destroyed by fire and some damage caused to the larger structure, and where evidence was admitted relative to the cost of restoration and no evidence admitted as to the difference in value of the property before and after the injury, the court held that with respect to the small building which had been practically destroyed by fire the measure of damages was the difference in value of the property before and after the injury, but that with respect to the damage to the larger building which could be easily restored and repaired, the measure of damage was the cost of restoration. On page 150 the court stated that in applying the rule that the measure of damages is the difference between the value of the property before and after the injury, "it is proper to take into consideration the cost of reconstruction, since that is clearly an element in determining the value of the building destroyed, depreciation and obsolescence on the property, original building cost, marketability of the building damaged, and the use to which it was being put by the person damaged."

It will be observed, however, that the court considered the fact there was no real market value for a church structure and that this fact called for the application of the principle of law just stated. We do not believe the court intended to modify the general rule that where the injury is of a permanent character the measure of damages is the difference in value of the property before and after the injury, and that evidence of the cost of restoration is inadmissible. The

cost of restoration is admissible where the injury is temporary rather than permanent. See, also, *City of Norwood* v. *Sheen, Exr.* (1933), 126 Ohio St., 482, 186 N. E., 102, 87 A. L. R., 1375, on the rule respecting the admissibility of evidence and the measure of damage applicable to temporary injury as distinguished from a permanent injury.

We finally cite the well considered opinion of Judge Skeel in *Koch* v. *O'Brien & Nye Cartage Co.* (1942), 37 Ohio Law Abs., 270, 46 N. E. (2d), 438, where the basement and walls of plaintiff's house were damaged by the defendant's driver backing defendant's truck into the plaintiff's driveway and striking the foundation walls of the structure. In that case the court held:

"The measure of damages for damage to property susceptible of being repaired is the reasonable cost of the repairs made necessary, unless it should appear that the amount thus determined is greater than the difference between the value of the property just before the damage was done and immediately after the damage was done, in which event the difference in such values would be the amount of damages recoverable."

The court reviewed numerous cases decided by the courts of Ohio, particularly *Ohio Collieries Co.* v. *Cocke, supra,* and on page 273, in commenting on that case, said:

"The rule as stated in the *Collieries case* is certainly supported by the great weight of authority."

The court also cited and quoted from 3 Sedgwick on Damages (1918), a part of which quotation is:

" 'Strictly speaking, therefore, the cost of repairs is not the measure of damages, but only evidence of the amount of damages.' "

The court also cited the rule stated in McCormack on Damages, 483, and 15 American Jurisprudence, 523, Section 113. The court made no distinction between

the rule applicable to a permanent injury and that applicable to a temporary injury to real property.

Even though the court should conclude that the removal of the topsoil by the defendant was a temporary injury there is no evidence in the case to warrant us applying the rule laid down in the case of *Ohio Collieries Co.* v. *Cocke, supra*, for the reason that there is no basis for determining whether the cost of replacement would exceed the difference in value of the real estate before and after the injury. On the other hand, if the court determines that the injury was of a permanent nature there is no basis for the award of damages for the reason that there is no evidence presented on the difference in value of the property before and after the injury. On either theory a reversal must be ordered. We are not required to decide whether the removal of topsoil is a temporary or permanent injury, but we proceed to do so as we believe it will be helpful to the trial court on retrial. The case law which we have examined indicates that where the injury abates by discontinuance of the wrong, or where the owner by his act can abate the wrong, the injury is held to be temporary. A line of distinction seems to be drawn between injury to crops, structures or improvements on the land and injury to the land itself. Where the injury still remains after the discontinuance of the wrong and will exist indefinitely and require the expenditure of time, effort and money to restore the land to a semblance of its original condition, the injury is held to be permanent. In law an injury may be considered to be permanent although not perpetual. The fact that topsoil is an article of commerce and that plaintiffs may replace the topsoil and grade the lot to its original state does not detract from the permanency of the injury as it now exists. The lot will remain in its present state indefinitely bereft

of topsoil and with the high ground partially removed unless the owner expends time, effort and money to restore it. By all the tests which may be applied the removal of topsoil and earth from plaintiffs' lot constituted a permanent injury and the measure of damages in respect thereto applies.

As we find error in the record prejudicial to the rights of the defendant, the judgment is reversed and the cause is remanded for further proceedings according to law.

*Judgment reversed.*

HORNBECK, P. J., and MILLER, J., concur.