REESER, Appellant,

v.

WEAVER BROTHERS, INC., Appellee.

[Cite as *Reeser v. Weaver Bros., Inc.* (1992), 78 Ohio App.3d 681.]

Court of Appeals of Ohio,
Darke County.

No. 1280.

Decided March 13, 1992.

682

*Stephen E. Klein* and *Irving I. Saul,* for appellant.

*Neil F. Freund,* for appellee.

WOLFF, Judge.

Treva M. Reeser appeals from a directed verdict granted in favor of Weaver Brothers, Inc. ("Weaver") on Reeser's claim to recover damages representing (1) compensation for annoyance and discomfort, and (2) the cost of restoring her injured real property to its pre-injury state. The trial court directed a verdict on the basis that Reeser was not entitled, as a matter of law, to recover compensation for annoyance and discomfort, or restoration costs. Reeser appeals from this judgment, advancing three assignments of error. Weaver has cross-appealed, claiming that the trial court erred by permitting Reeser to proffer her testimony from the first trial, as well as depositions and the testimony of other potential witnesses from the first trial.

In 1943, Treva Reeser and her husband, Paul, purchased an eighty-acre parcel of land on the Versailles–Southeastern Road in Darke County. In 1953, they purchased an additional sixty-nine-acre parcel which adjoined the eighty-acre tract to the south. Between 1953 and 1964, the Reesers created three lakes on the sixty-nine-acre tract. These two tracts are part of a 322.5–acre watershed which drains into the Stillwater River. The lakes became known as Paul's Lakes.

From 1964 to 1984, the Reesers operated various commercial enterprises in conjunction with the lakes. These business pursuits included pay fishing, a year-round trailer park, an automotive garage, a snack bar and bait shop, commercial camping, commercial farming, and residential rental property.

In 1984, Weaver purchased one hundred fifteen acres of land in the center of the 322.5–acre watershed. Weaver's land is directly upstream from the Reeser property in the watershed area, which supplies water to the Reeser properties. Weaver purchased the land in order to build an "agri-industrial complex" to house egg production operations involving 380,000 chickens. During the following year, the chicken operations produced over a million pounds of organic matter consisting of chicken manure and egg rinse wastewater. In less than a year's time, all the fish and other living organisms in Ravine Lake, the largest of the Reesers' three lakes, died from a massive influx of organic material. This event became known as the "fish kill incident of 1985."

Paul Reeser died in February 1986. Treva Reeser sued Weaver on her own behalf and as executrix of Paul's estate in June 1986, alleging five causes of

action, only two of which, negligence and nuisance, went to the jury. Evidence revealed that there was some sort of "scum" floating on the lake, and that the scum was seen to emanate from a drainage tile that ran through Weaver's property. Reeser's damage allegation focused on the 1985 fish kill. The jury found for Reeser on the nuisance claim and awarded Treva Reeser and the estate of Paul Reeser $200,000 in damages. Weaver appealed. We affirmed the judgment as to Weaver's liability, but reversed on the issue of the damages award. We determined that under the facts of the case, the trial court had improperly admitted evidence of damages allegedly occasioned by the negligent infliction of emotional distress. We remanded the case to the trial court for a new trial solely on the issue of damages because we could not determine what portion of the damages award, if any, was attributable to emotional distress. *Reeser v. Weaver Bros., Inc.* (1989), 54 Ohio App.3d 46, 560 N.E.2d 819.

A new trial on damages began on October 29, 1990. At this trial, Treva Reeser presented evidence of annoyance and discomfort damages as well as a proffer of evidence of the cost of restoring Ravine Lake to its pre-injury state. Reeser did not present or proffer any evidence of the difference between the fair market value of the lake property before and after the injury, nor did she present evidence of lost profits, loss of rentals, or loss of use of the property she suffered by virtue of the nuisance.

Weaver moved for a directed verdict at the end of Reeser's presentation and proffer of evidence on the grounds that: (1) Reeser was not entitled to recover annoyance and discomfort damages because she was not an occupier of the damaged property, and (2) Reeser was not entitled to recover restoration costs without offering proof of the difference between the pre-injury and post-injury fair market value of the property. The trial court granted the directed verdict.

We first address Reeser's second assignment of error:

"Second Assignment of Error

"The trial court erred in ruling as a matter of law that appellant was not entitled to compensation for the expense of remediating the property damages proximately resulting from appellee's nuisance."

In her complaint, Reeser alleged that "the operation of Defendant's business constitutes a nuisance and an unreasonable interference with Plaintiff's rights." The complaint did not characterize the nuisance as either permanent or temporary.

Prior to the damages trial, neither the parties nor the trial court clearly characterized the type of nuisance involved in the action. It was only during

the damages trial that the nuisance was first referred to as temporary in nature. Reeser did not dispute this characterization. Indeed, this characterization is consistent with her theory of recovery, *i.e.*, that she is entitled to restoration costs. *Ohio Collieries Co. v. Cocke* (1923), 107 Ohio St. 238, 140 N.E. 356, paragraph five of the syllabus, established the following general rule of recovery when restoration costs are sought:

"If restoration can be made, the measure of damages is the reasonable cost of restoration, plus the reasonable value of the loss of the use of the property between the time of the injury and the restoration, unless such cost of restoration exceeds the difference in the market value of the property as a whole before and after the injury, in which case the difference in the market value before and after the injury becomes the measure."

■ *Ohio Collieries* also established the rule that if the land has sustained a permanent or irreparable injury, damages are limited to the difference in the market value of the property, including improvements, before and after the injury. *Id.* at 248, 140 N.E. at 359. In this case, we need not consider whether Reeser could have recovered damages for a permanent injury to her property inasmuch as she has conceded that she never offered any evidence of the market value of the property. Furthermore, she does not claim that the damage is irreparable.

■ If the injury is temporary and thus susceptible to repair, then, generally, the landowner may recover the reasonable cost of restoration, plus the reasonable value of the loss of the use of the property between the time of the injury and the restoration. *Ohio Collieries, supra,* at 248, 140 N.E. at 359. See, also, Restatement of the Law 2d, Torts (1979), Section 929. The value of the use of the property is measured according to the purpose for which the property is held. If the injured property is held for rental purposes, then the "value of the use" is the diminution in the property's rental value. *Klein v. Garrison* (1951), 91 Ohio App. 418, 420, 427, 49 O.O. 25, 26, 29, 108 N.E.2d 381, 382, 385; *Graham & Wagner, Inc. v. Ridge* (1931), 41 Ohio App. 288, 289, 179 N.E. 693. However, if the property is not held for rental purposes, diminution in rental value does not provide a reliable basis upon which to estimate damages. For example, if the property is held for personal use, such as for a personal residence, then the "value of the use" is simply measured by the diminution in the value of the use of the property during the period of the injury. *Norwood v. Sheen* (1933), 126 Ohio St. 482, 494, 186 N.E. 102, 106.

■ The record supports the conclusion that Reeser was precluded from recovering either type of diminution in "value of use" damages. She neither

presented evidence, nor even alleged, that the nuisance caused her to suffer a loss of rent; nor did she allege that she held the property for a personal reason. Thus, the sole issue we must consider in this assignment is whether Reeser was entitled to recover her claimed reasonable restoration costs under a theory that the property sustained a temporary injury.

In addressing the issue of restoration costs at the damages trial, the court, by its own admission, applied the most restrictive measure of damages. The court held that the proper measure of damages was the "impaired value of the property during the period in which the nuisance was found to have occurred."

Reeser challenges this determination on the authority *Denoyer v. Lamb* (1984), 22 Ohio App.3d 136, 22 OBR 375, 490 N.E.2d 615, claiming that she had the option to recover damages equal to the diminution in value of the land as a whole, or the reasonable cost of restoration, and that she was not required to present evidence of the diminution in the fair market value because she opted to recover restoration costs and because *Denoyer* permits recovery of restoration costs even though such recovery exceeds the diminution in market value.

We agree that *Denoyer* does hold that restoration costs are not limited to the diminution in the market value of the real property. However, that is not to say that *Denoyer* authorizes recovery of restoration costs in any amount. We so conclude based on a review of some of the cases which preceded *Denoyer*.

Generally, reasonable restoration costs were recoverable to the extent that such costs did not exceed the difference in the real property's market value before and after the injury. *Ohio Collieries, supra,* at paragraph five of the syllabus.

This rule, which limits the recovery of restoration costs to the diminution in market value, does not appear to be, however, an immutable rule applicable to every case involving an injury to real property. After deciding *Ohio Collieries*, the Supreme Court departed from the "diminution in market value" rule to permit as damages restoration costs which might exceed the difference in market value. *Northwestern Ohio Natural Gas Co. v. First Congregational Church* (1933), 126 Ohio St. 140, 184 N.E. 512. In this case, which involved a damaged church building, the Supreme Court departed from the "diminution in market value" test in order to ensure that an injured landowner would be fully compensated for the loss sustained. *Id.* at 150, 184 N.E. at 516. The court held at 150–151, 184 N.E. at 516–517:

" * * * As urged by counsel for plaintiff in error on oral argument at rehearing, fundamentally it is the purpose of the law to afford to the person damaged compensation for the loss sustained. In a case involving the

destruction of a building by fire negligently caused, where restoration is impracticable, the measure of damages is the difference between the reasonable value immediately before the damage and the reasonable value immediately afterwards.

" * * *

"In cases in which restoration of the building damaged can be made, the measure of damages is the reasonable cost of restoration or repairs.

" * * *

"*In the instant case all of the testimony tended to indicate that the property damaged had no market value, as that term is ordinarily understood.* Manifestly, to apply such a test exclusively in this case would not have resulted in giving the church fair compensation for its loss. * * * " (Emphasis added.)

Although *Northwestern Ohio Natural Gas Co.* did not refer to *Ohio Collieries*, there is no internal inconsistency between the two cases. The holding in *Northwestern Ohio Natural Gas Co.*, which involved damaged property without market value, was simply an acknowledgement that application of the general rule of *Ohio Collieries* would not result in adequate compensation in all situations. However, the court failed to provide any guidance for measuring the reasonableness of restoration costs.

Some guidance was provided by the Franklin County Court of Appeals, which analyzed *Ohio Collieries* and *Northwestern Ohio Natural Gas Co.*, and concluded, quoting Annotation (1960), 69 A.L.R.2d 1335, 1336, that the general rule of *Ohio Collieries* was not intended to be a " 'formulaic criterion that must be followed in every instance.' " *Thatcher v. Lane Constr. Co.* (1970), 21 Ohio App.2d 41, 44, 50 O.O.2d 95, 97, 254 N.E.2d 703, 706. The court so held based in part on the Restatement of the Law 2d, Torts (1979), Section 929, and in part on the express holding of *Northwestern Ohio Natural Gas Co., supra.*

Comment *b* to Section 929 of the Restatement states:

"*b. Restoration.* Even in the absence of value arising from personal use, the reasonable cost of replacing the land in its original position is ordinarily allowable as the measure of recovery. Thus if a ditch is wrongfully dug upon the land of another, the other normally is entitled to damages measured by the expense of filling the ditch, if he wishes it filled. *If, however, the cost of replacing the land in its original condition is disproportionate to the diminution in the value of the land caused by the trespass,* unless there is a reason personal to the owner for restoring the original condition, *damages are measured only by the difference between the value of the land before and*

*after the harm.* This would be true, for example, if in trying the effect of explosives, a person were to create large pits upon the comparatively worthless land of another.

"On the other hand, where a building such as a homestead is used for a purpose personal to the owner, the damages ordinarily include an amount for repairs, even though this might be greater than the entire value of the building. So, when a garden has been maintained in a city in connection with a dwelling house, the owner is entitled to recover the expense of putting the garden in its original condition even though the market value of the premises has not been decreased by the defendant's invasion." (Emphasis added.)

By relying upon this section of the Restatement, *Thatcher* suggests that the test of reasonableness of restoration costs is whether the restoration costs sought are *disproportionate* to the diminution in the property's market value. This result is consistent with *Northwestern Ohio Natural Gas Co.,* which recognizes that at least where the injured property has no market value, reasonable restoration costs may necessarily exceed the difference in the before and after market values of the injured real property, *i.e.,* zero. *Id.,* 126 Ohio St. at 150–151, 184 N.E. at 516–517. At the same time, *Thatcher* is a next step in the evolution of the rule of restoration costs, inasmuch as it provides a test to measure the reasonableness of restoration costs. By using the phrase "disproportionate to" rather than the phrase "in excess of," the Restatement, upon which *Thatcher* relies, makes clear that reasonable costs of restoration may exceed the difference between the before and after value of the land. However, this differential remains the touchstone of the reasonableness determination. Thus, evidence of the property's fair market value before and after the injury is required in order to assess whether the restoration costs sought are reasonable.

*Thatcher* does provide an exception to the disproportionality test. If the landowner has a personal reason for restoring the property to its original condition, such as use of the property as a homestead, then the landowner might be entitled to recover costs which are disproportionate to the diminution in market value. *Thatcher* involved a personal reason to restore the property.

*Denoyer* involved an action for compensatory damages for the destruction of trees and other damage to property on which the trees were located. At trial, the plaintiff had unsuccessfully sought to introduce evidence of the reasonable restoration costs. The trial court had limited plaintiff's damages to the timber value of the trees severed from the land. *Id.,* 22 Ohio App.3d at 137, 22 OBR at 376, 490 N.E.2d at 617. On appeal, the plaintiff raised as error the measure of damages applied by the trial court. In sustaining the

assignment, the trial court relied on *Thatcher* and held in 22 Ohio App.3d at 138–139, 22 OBR at 378, 490 N.E.2d at 618:

" * * * in an action for compensatory damages for cutting, destroying and damaging trees and other growth, and for related damage to the land, when the owner intends to use the property for a residence or for recreation or for both, according to his personal tastes and wishes, the owner is not limited to the diminution in value (difference in value of the whole property before and after the damage) or to the stumpage or other commercial value of the timber. He may recover as damages the costs of reasonable restoration of his property to its preexisting condition or to a condition as close as reasonably feasible, without requiring grossly disproportionate expenditures and with allowance for the natural processes of regeneration within a reasonable period of time. *Heninger v. Dunn* (1980), 101 Cal.App.3d 858, 162 Cal.Rptr. 104; *Thatcher v. Lane Constr. Co.* (1970), 21 Ohio App.2d 41 [50 O.O.2d 95, 254 N.E.2d 703]. See, also, *Adcock v. Rollins Protective Services Co.* (1981), 1 Ohio App.3d 160 [1 OBR 471, 440 N.E.2d 548]." ·

*Denoyer* then cited the same section of the Restatement as did *Thatcher*. We see no appreciable difference between the holdings of *Thatcher* and *Denoyer*. As in *Thatcher*, the property owner in *Denoyer* had a "personal reason" to restore the property which, in accordance with the Restatement, allowed the owner to recover damages which were disproportionate to the diminution in value. Even so, *Denoyer* did not countenance "grossly dispro-portionate" restoration costs as damages.

Reeser also relies on *Weld Cty. Bd. of Cty. Commrs. v. Slovek* (Colo.1986), 723 P.2d 1309, to support her position that her recovery is not limited to the diminution of market value test. Like *Thatcher*, *Slovek* declined to adopt the diminution in market value test as the sole measure of recoverable restoration costs. Indeed, the majority in *Slovek* declined to categorically cap reasonable restoration costs at pre-injury *value*. The Colorado Supreme Court held in 723 P.2d at 1317:

"If the damage is reparable, and the costs, although greater than original value, *are not wholly unreasonable in relation to that value*, and if the evidence demonstrates that payment of market value likely will not adequate-ly compensate the property owner for some personal or other special reason, we conclude that the selection of the cost of restoration as the proper measure of damages would be within the limits of a trial court's discretion.

"Obviously, to the extent that a property owner is allowed to recover costs of restoration that are greater than the diminution in market value, there is the possibility that the owner will receive a monetary windfall by choosing not to restore the property and by selling it instead, profiting to the extent that

restoration costs recovered exceed the diminution of market value. The problem is no different, except in degree, if restoration costs are allowed in an amount exceeding the pre-tort value of the property. These possibilities suggest the need for careful evaluation by the trial court to assure that any damages allowed in excess of either of these two measures are truly and reasonably necessary to achieve the cardinal objective of making the plaintiff whole.

"In summary, we conclude that the selection of the proper measure of damages in tort for injury to real property requires the exercise of informed discretion by the trial court and that no single measure of damages and no arbitrary limit on the amount permissible can be applied to limit the exercise of that discretion." (Emphasis added.)

Thus, *Slovek* does not authorize as expansive a recovery as Reeser argues that it authorizes. *Slovek* clearly requires evidence of market value in order to assess whether the restoration costs sought are reasonable. Therefore, Reeser's reliance on *Slovek* as excusing her lack of evidence of diminution of fair market value is misplaced.

*Ohio Collieries* remains the definitive statement of the general rule of the measure of damages for permanent and temporary injury to real property. Although *Northwestern Ohio Natural Gas Co.* was a departure from the general rule articulated in *Ohio Collieries*, the facts of this case do not justify a departure from *Ohio Collieries*. Nothing of record suggests, nor does Reeser argue, that there was no diminution in fair market value, or that the damaged property had no market value.

Although we are impressed with *Thatcher* and *Denoyer*, we would nevertheless hesitate to apply them in this case. To be sure, both cases suggest that in any case involving reparable injury to real property, restoration costs are recoverable so long as they are not disproportionate to the diminution of the value of the real property. Both *Thatcher* and *Denoyer*, however, involved damage to property which the owners held for a personal use. Here, Reeser has established only a commercial reason, not a personal one, for restoring the lake property to its original condition. Furthermore, *Thatcher* and *Denoyer* are not Supreme Court cases. Finally, and most important, even under the more expansive measure of damages suggested in *Thatcher* and *Denoyer*, Reeser was required to establish the fair market value differential as that differential is the touchstone for determining whether her claimed restoration costs were reasonable.

■ We conclude that, as a general rule, a landowner whose real property has suffered a temporary injury is entitled to recover reasonable restoration costs, plus the reasonable value of the loss of use of the property between the

injury and the restoration. However, recovery is circumscribed by the limitation that the recoverable restoration cost cannot exceed the difference between the pre-injury and post-injury fair market value of the real property. In other words, as to restoration costs, when restoration costs exceed the diminution in fair market value, the diminution of fair market value becomes the measure of damages. Such recovery necessarily requires evidence of the pre-injury and post-injury market value of the injured real property. Moreover, the party seeking restoration costs bears the burden of establishing the diminution in the property's fair market value. See *Klein v. Garrison* (1951), 91 Ohio App. 418, 427, 430, 49 O.O. 25, 29, 31, 108 N.E.2d 381, 385, 387. Therefore, in order to recover reasonable restoration costs, Reeser was required to present evidence of the diminution in the fair market value of her property after the injury. Upon such proof, her recovery would nonetheless have been limited to an amount not in excess of the diminution in the property's fair market value.

■ Reeser presented no evidence of the pre-injury and post-injury fair market value of the real property. In view of this omission, we conclude that the trial court correctly determined that Reeser was not entitled to recover restoration costs. As noted, *supra*, we would likewise so conclude, given this omission, even if we were to apply *Thatcher* and *Denoyer*.

The second assignment is overruled.

"First Assignment of Error

"The trial court erred in ruling as a matter of law that appellant was not entitled to compensation for annoyance and discomfort damages proximately resulting from appellee's nuisance."

■ In order to recover damages for annoyance and discomfort, the party alleging the injury must be an "occupant" of the property. *Frey v. Queen City Paper Co.* (1946), 79 Ohio App. 64, 71, 34 O.O. 454, 457, 66 N.E.2d 252, 255. *Frey* held that:

" 'The authorities strongly preponderate in support of the doctrine that an occupant of real estate (whether owner or not) may recover damages for personal discomfort, annoyance, etc., resulting to him from a nuisance, in addition to, or separate from, damages suffered in respect of the market value of the premises, or injuries to or destruction of buildings, crops, etc., thereon.' " *Id.* at 71, 34 O.O. at 457, 66 N.E.2d at 255, citing Annotation (1943), 142 A.L.R. 1307, 1316.

■ If the party alleging the nuisance is not an occupant, but rather only a landowner, then the recoverable nuisance damages are limited to damages sustained by virtue of the party's status as an injured landowner. These

damages include diminution of rents, failure (*i.e.*, inability) to rent the premises, physical injury to the property, or the cost of repairs. *Id.; Dieringer v. Wehrman* (1882), 9 Ohio Dec.Rep. 355, 356. Thus, a non-occupier landlord may not recover annoyance and discomfort damages. See *Dieringer, supra.*

 In this case, the trial court held that, as a matter of law, Reeser was not an occupant of the sixty-nine-acre tract upon which the lakes were situated, and thus she was not entitled to recover damages for annoyance and discomfort. The court held that Reeser had presented no evidence that she was anything but an "owner/non-occupier" of the land. Presumably, the trial court adopted defense counsel's argument that although Reeser worked on the sixty-nine-acre tract, she occupied, and was a resident of, the adjoining eighty-acre tract. Apparently, both defense counsel and the trial court equated "occupancy" with "residency."

Reeser admits in her brief that at all times she and her husband lived on the eighty-acre tract which abutted the sixty-nine-acre tract. She does not deny that she never resided on the sixty-nine-acre tract. However, she nonetheless maintains that she was an occupant of the sixty-nine-acre parcel.

Reeser offers the following dictionary definition of "occupant" in support of her allegation that she was an occupant:

"Occupant. Person in possession. Person having possessory rights, who can control what goes on on premises. One who has actual use, possession or control of a thing. *Redevelopment Authority of Allegheny County v. Stepanik*, 25 Pa.Cmwlth. 180, 360 A.2d 300, 302. One who takes the first possession of a thing of which there is no owner. One who occupies and takes possession. Person who acquires title by occupancy." Black's Law Dictionary (6 Ed.Rev.1990) 1078.

Reeser's dictionary definition is consistent with case law which suggests that an occupant is one who is in *possession* of premises. *Dieringer, supra,* 9 Ohio Dec.Rep. at 356. *Dieringer* involved non-occupying landlords who brought a nuisance action to recover annoyance damages suffered when sewage material flooded the basement of the apartment building they owned. The court disallowed such damages, finding that the action had been brought by the plaintiffs solely in their capacity as landowners. The court held that only the tenants could have recovered annoyance damages because they, not the landlords, were the occupants who were in possession of the premises. In other words, the tenants, not the landlords, had actually suffered the injury. *Id.* By not including a residency requirement, the dictionary definition quoted above necessarily recognizes that the person in possession of the property need not reside on the property in order to be an occupant. Furthermore, one who merely occupies real estate, as opposed to residing on it, can, in fact,

suffer discomfort and annoyance as a result of a nuisance. In this case, Treva Reeser testified that she was physically present at the lake site twenty-four hours a day during fishing season because customers of the fishing lakes business she operated required service at all hours of the day and night.

While it is true that forty-nine acres of the sixty-nine-acre tract were devoted to sharecropping, and part of the acreage was rented to a repair shop business and to a few families who lived in trailers, no one other than the Reesers had possession of the lake acreage. Therefore, Reeser's evidence tended to establish her occupancy of at least a portion of the sixty-nine-acre tract. Accordingly, we conclude that the evidence presented an issue for the jury as to Reeser's status as an occupant of the tract upon which the lake enterprises were operated, and her damages, if any, for discomfort and annoyance.

The jury's consideration of such damages must, of course, be limited to that period of time that Treva Reeser continued to occupy the lake site after the 1985 fish kill.

The first assignment is sustained, and the matter will be remanded for consideration of Reeser's alleged damages for annoyance and discomfort.

"Third Assignment of Error

"The trial court erred in ruling as a matter of law that appellant was not entitled to compensation for any damages proximately resulting from appellee's nuisance which did not become manifest until after June 28, 1985."

At the second trial, Reeser argued that the damage caused by the temporary nuisance extended beyond the fish kill incident of 1985. She claimed that the injury was ongoing and continued to exist as late as the commencement of the second trial. She proffered evidence that the contamination caused by Weaver's operations continued to cause oxygen deprivation and a build up of residual copper in the lake sediment. These conditions continued to suppress the lake's living organisms. Moreover, she proffered that the potable water supply to the lake properties showed signs of contamination. Consequently, the lake was still "dead" at the time of the second trial. Reeser maintained that the 1985 fish kill was simply the first manifestation of the damage caused by the temporary nuisance. She alleged that the conditions which continued to suppress the lake life were merely subsequent manifestations resulting from the same nuisance which caused the 1985 fish kill.

She claims on appeal that these other damages were not evident at the time of the first trial but were nevertheless consistent with the damages which

were evident at the first trial. She argues that all her claimed damages were proximately caused by the temporary nuisance.

Weaver countered that the 1985 fish kill was the only damage caused by the temporary nuisance. Weaver then claimed that Reeser's argument of "subsequent manifestations" was, in fact, an attempt to prove a permanent nuisance, a cause of action not previously asserted.

The trial court ruled that evidence of "subsequent manifestations" of the nuisance would be admissible to show an update on the present condition of the lake. However, the court ruled that such evidence was not admissible as proof of additional damages caused by the temporary nuisance.

This ruling did not prejudice Reeser. Under the rule of *Ohio Collieries*, Reeser's damages were either the diminution in the fair market value of her property if the damage was irreparable, or reasonable restoration costs if the injury was reparable. Reeser sought to recover the reasonable restoration costs, but failed to meet her burden of proof because she presented no evidence of the diminution in the fair market value of the real property before and after the nuisance. See discussion of second assignment of error, *supra.*

The third assignment is overruled.

We turn now to Weaver's cross-appeal, which is as follows:

"The trial court erred by accepting appellant's proffer of testimony."

In its cross-appeal, Weaver argues that the court erroneously permitted Reeser to proffer evidence from the first trial at the second trial. Weaver alleges that the proffer was improper because it was not made in response to an adverse evidentiary ruling nor was it properly placed in the record.

The proffered evidence consisted of Reeser's testimony, portions of the transcript from the first trial, summaries of witnesses' anticipated testimony and depositions from expert witnesses.

Weaver argues that the lack of an adverse evidentiary ruling is fatal to Reeser's proffer. We disagree. The court ruled that it would apply the most restrictive measure of damages, which would have precluded Reeser's recovery of her claimed restoration costs. The court also ruled that Reeser was not an occupant of the injured property. By so ruling, the court intimated to both parties that it would sustain Weaver's motion for a directed verdict on all the damage claims. Therefore, the court, in effect, made the equivalent of an adverse evidentiary ruling.

Moreover, we conclude that the failure to read the proffered testimony into the record was not fatal to the proffer. The first trial took place over the course of several weeks. Consequently, the proffered evidence, much of

which consisted of testimony from the first trial, was quite voluminous. In permitting Reeser to proffer the evidence by identification rather than by reading all of it into the record, the court stated that it was quite familiar with the substance of the proffered evidence and thus found it unnecessary, as well as inefficient, to have all of it read into the record. The trial court's rulings on damages made it abundantly clear to Reeser's counsel that she would not get to the jury. We do not fault the trial court for allowing her to make her record for appeal in an expeditious manner.

Weaver's sole assignment is overruled.

The judgment of the trial court will be reversed, and the matter will be remanded for further proceedings consistent with this opinion.

*Judgment reversed*
*and cause remanded.*

FAIN, P.J., and GRADY, J., concur.