[Cite as *Case Leasing & Rental, Inc. v. Ohio Dept. of Natural Resources*, 2011-Ohio-1417.]

# Court of Claims of Ohio

The Ohio Judicial Center
65 South Front Street, Third Floor
Columbus, OH 43215
614.387.9800 or 1.800.824.8263
www.cco.state.oh.us

CASE LEASING & RENTAL, INC.

    Plaintiff

    v.

OHIO DEPARTMENT OF NATURAL
RESOURCES

    Defendant
    Case No. 2005-08034

Judge Joseph T. Clark

DECISION

{¶ 1}  On June 19, 2008, this court issued a liability determination in favor of plaintiff,[1] an Ohio corporation and owner of an 87,500 square foot facility known as the Lake Front Racquet and Health Club (the RecPlex) in Celina, Ohio.

{¶ 2}  In July 2003, the RecPlex sustained extensive damage as a result of flooding that occurred after a severe storm passed through the area.  The court found that defendant, the Ohio Department of Natural Resources (ODNR), was liable for such damage as a result of its negligent construction and maintenance of a spillway located near the RecPlex property.

{¶ 3}  On February 11, 2009, following the damages portion of the bifurcated trial, a magistrate of the court recommended judgment in the amount of $4,235,444,

---

[1]References to "plaintiff" in this decision are to Tom Case, owner of plaintiff corporation, an entity separate from the Recplex.

which consisted of $2,735,000 for diminution in value of the real property, $551,119 in personal property loss, $949,300 in interest costs on bank loans associated with restoration and repair of the property, and $25 for reimbursement of the court's filing fee. The recommendation regarding the loss of market value was based upon a finding that plaintiff's loss was permanent in nature inasmuch as neither the design nor the structure of the spillway were reasonably likely to change in the near future and continued intermittent flooding of the property was inevitable.

**{¶ 4}** The parties filed timely objections to the magistrate's recommendation. The court thereafter issued a decision, dated April 16, 2009, wherein it adopted the magistrate's decision that the damage to plaintiff's property was permanent, but disallowed the award of $949,300 in interest costs. The court reasoned that plaintiff's decision to repair and reopen the RecPlex was at his own risk and expense, and that any award of interest charged upon sums borrowed to finance the repair of the RecPlex was in error. The court summarized that the loss of market value of the property was the extent of defendant's liability and the limit of plaintiff's recovery. Accordingly, the court entered judgment in the reduced amount of $3,286,144.

**{¶ 5}** The parties then filed cross-appeals to the Tenth District Court of Appeals. On December 15, 2009, the appeals court affirmed this court's decision on liability, but reversed and remanded the case for further determination on the issue of damages. The court held that the damage to plaintiff's property should have been deemed to be temporary because, in order to prevent or minimize future flooding events, plaintiff had built an approximately six-foot-high dike around the property after the 2003 flood. The court explained that "[t]he injury to [plaintiff's] property was temporary because it was repairable, and the owners took measures to alleviate the risk of further flooding." *Case Leasing & Rental, Inc. v. Ohio Dept. of Natural Resources*, Franklin App. No. 09AP-498, 2009-Ohio-6573, ¶40. Therefore, the appeals court concluded that the proper measure of damages was "the reasonable cost of repair, plus reasonable compensation for the loss of the use of the property" and remanded the case "for a determination of damages for a temporary injury to the property." Id. at ¶41.

**{¶ 6}** Upon review of the evidence, testimony, and the arguments of counsel, the court makes the following determination.

**{¶ 7}** Plaintiff is now claiming damages in the total amount of $5,201,911. Defendant asserts that plaintiff's damages are minimal, if any, and puts forth essentially one argument in support of that proposition: a reassertion of its previous contention that plaintiff lacks standing to assert its damages claims. Those arguments were presented at the liability trial and were rejected in the court's subsequent written decision.[2] The determination of that issue was not assigned as error in ODNR's appeal to the Tenth District, nor was it addressed in that court's decision. To the contrary, the appeals court held that plaintiff was "entitled" to damages. Thus, in accordance with the law of the case doctrine, the court again rejects defendant's arguments as to any alleged lack of standing. It is well-settled that "the decision of a reviewing court in a case remains the law of that case on the legal questions involved for all subsequent proceedings in the case at both the trial and reviewing levels." *Nolan v. Nolan* (1984), 11 Ohio St.3d 1, 3. The Supreme Court of Ohio has further explained that " the rule is necessary to ensure consistency of results in a case, to avoid endless litigation by settling the issues, and to preserve the structure of superior and inferior courts as designed by the Ohio Constitution." Id. citing *State ex rel. Potain v. Mathews* (1979), 59 Ohio St.2d 29, 32. Nonetheless, the doctrine is not a substantive rule of law, but rather, is a rule of practice that should not be applied to achieve unjust results. Id. citing *Gohman v. St. Bernard* (1924), 111 Ohio St. 726, 730, reversed on other grounds. (Additional citations omitted.)

**{¶ 8}** Based upon the foregoing, the court accepts as settled that plaintiff has standing to pursue his damages claims. However, the second branch of defendant's argument is that, even if plaintiff's standing is established, his recovery is limited to the

---

[2]Specifically, the court held that: "[d]efendant has argued that plaintiff lacks standing to assert its claims because it did not own the property at the time of the July 2003 flood. The court finds that argument to be without merit inasmuch as plaintiff financed the purchase and received a mortgage on the property as security. Ohio law permits mortgagees to sue third parties for damage to their security interest. *City of Toledo v. Brown* (1936), 130 Ohio St. 513, 519. See also *Trip Agency, Inc. v. R. G. Akkihal* (Nov. 4, 1991), Lawrence App. No. 1790; *RFC Capital Corp. v. Earthlink, Inc.*, Franklin App. No. 03AP-375, 2004-Ohio-7046. Moreover, at the time of the flood, the purchasers had made only one payment of $100,000 on the $3,000,000 they financed, and they had no insurance on the property. They threatened to file bankruptcy if plaintiff pursued them for the balance of the mortgage. Plaintiff never released the mortgage and the property was conveyed back to it on September 1, 2003." *Case Leasing & Rental, Inc. v. Ohio Dept. of Natural Resources*, Ct. of Cl. No. 2005-08034, 2008-Ohio-3411, fn.2.

amount that his mortgage interest was impaired. Again, that issue was not assigned as error to the Court of Appeals nor addressed in its decision. To the contrary, the appeals court specifically defined the measure of damages for temporary injury to property. Thus, the law of the case precludes further review of the issue and the court finds that application of the doctrine does not achieve an unjust result in this case.

{¶ 9} Accordingly, the court turns to analysis of plaintiff's damages claims as directed by the Court of Appeals. It is axiomatic that plaintiff bears the burden of proof on damages. *Henderson v. Spring Run Allotment* (1994), 99 Ohio App.3d 633, 641. In making its determination, the court's "essential inquiry is whether the damages sought are reasonable." *Martin v. Design Const. Servs., Inc.,* 121 Ohio St.3d 66, 2009-Ohio-1, ¶25.

## I. REPAIR AND RESTORATION

{¶ 10} As discussed in this court's liability and damages decisions, the 2003 flood devastated plaintiff's property. Plaintiff contracted with Shinn Brothers, Inc. for the majority of the labor involved in repairing and restoring the RecPlex to its pre-flood condition. The cost for those services was $1,446,675.61. Plaintiff also alleges that he paid an additional $89,607 to other vendors for restoration services and expenses. All of the expenses were documented in Plaintiff's Exhibit 10, which was prepared by plaintiff's daughter, Cheri Kraska. There was no credible testimony or other evidence to contradict the documented amounts. The court concludes that plaintiff has proven by a preponderance of the evidence that he incurred $1,536,282.61 ($1,446,675.61 + $89,607) for this portion of the repair and restoration efforts. The court finds that the costs are reasonable in light of both the extent of the damage sustained to the property and the intensive labor involved in its reconstruction. Accordingly, plaintiff is entitled to compensation for the requested amount.

{¶ 11} In addition to the work provided by Shinn Brothers, Inc., plaintiff alleges that he also utilized services provided by RecPlex employees, Case Leasing, Inc. employees, and independent contractors. Plaintiff alleges that from July 1, 2003 through September 2003, RecPlex employees were solely engaged in repair and restoration activities; however, in October 2003, portions of the RecPlex reopened and

some employees returned to their usual duties while continuing to assist with restoration work. Plaintiff and Kraska then began a process whereby they estimated the percentage of the employees' work week spent on restoration activities and followed-up by interviewing the respective employees to confirm the accuracy of the estimates. The results of that process are documented in Plaintiff's Exhibit 12, also generated by Kraska, which shows that RecPlex employees were paid $104,229.90 for their continued restoration services. The work performed by the independent contractors and employees of Case Leasing, Inc., was calculated in the same manner as the RecPlex employees' services, and was documented as $302,932.66.[3] Plaintiff is seeking compensation in the total amount of $381,540 for these expenses.

{¶ 12} The court finds that plaintiff failed to prove by a preponderance of the evidence that he is entitled to compensation for the total amount claimed for these additional labor expenses. There is no documentary evidence as to the services provided, the hourly rate of the RecPlex or Case Leasing employees, the type of work that they ordinarily performed for their employers, or how their talents or the cost of their services would compare to the cost of hiring outside labor for the various tasks performed. Likewise, there is no documentary evidence as to the amount of work performed by the independent contractors or why their work was necessary in addition to that provided by Shinn Brothers, Inc. and the others previously discussed. The court finds that neither the documentation nor the testimony presented provide a reasonably certain basis for an award of the claimed amount. Accordingly, the court shall award compensation only for the RecPlex employees' labor expense in the amount of $5,503.47, for the period from July 2003 to September 30, 2003, when the facility was completely closed and there was no work other than repair and restoration to perform.

{¶ 13} Plaintiff also seeks an award of $500,000 for repair of the nine-hole golf course that previously existed on the property. Plaintiff concedes that he did not rebuild the course and that, even though a dike was constructed around the RecPlex property, it does not protect the entire 21 acres upon which the facility is situated. As a result,

---

[3]Although the total of the two amounts equals $407,162.56, plaintiff asserts that he arrived at the requested amount after deducting $19,200 of labor expenses that were also included in the $1,536,283

plaintiff cannot prevent future flooding to the golf course portion of his property. The court finds that it would be unreasonable to award damages for a restoration that has not actually been performed, and for which it would make little economic sense to pursue. Therefore, no award shall be granted for future repair of the golf course.

**{¶ 14}** Finally in this category, plaintiff seeks damages in the amount of $551,119 for personal property inside the RecPlex that was repaired and put back into use. This court's previous award for that amount was not assigned as error on appeal. However, defendant now contests an award for such damages, based upon its lack of standing arguments and the documentation offered to support those contentions. Again, the law of the case doctrine precludes further debate of the issue, and there was no testimony or other evidence that persuades the court that application of the doctrine would achieve an unjust result. Accordingly, the court concludes that plaintiff is entitled to compensation for the claimed amount of $551,119.[4]

**{¶ 15}** In summary, judgment shall entered in the total amount of $2,092,905.08 ($1,536,282.61 + $5,503.47 + $551,119) for plaintiff's costs of repair and restoration. As noted by the Court of Appeals on remand, "evidence of diminution of the market value is relevant in deciding whether the actual costs of repair and restoration are reasonable." *Case Leasing*, supra, at ¶43. The court concludes that the amount awarded is reasonable based upon its previous finding that the diminution of market value for the property was $2,735,000.

## II. INTEREST ON LOANS

**{¶ 16}** Plaintiff is seeking recovery for the cost of interest paid on $5,000,000 in loans, all of which were allegedly obtained to restore and repair the RecPlex to its pre-flood operating conditions. The amount of those loans and the interest associated with each is set forth in Plaintiff's Exhibits 2 and 13. As stated by the Court of Appeals on

amount documented in Plaintiff's Exhibit 10. According to the court's calculations, $407,162.56 - $19,200 equals $387,962.56.

[4]As a result of such determination, both plaintiff's August 23,2010 "motion to certify a partial judgment" and defendant's September 9, 2010 "motion for relief from judgment" are DENIED as moot. Additionally, plaintiff's September 17, 2010 motion for leave to file a reply in support of its motion to certify a partial judgment, defendant's October 7, 2010 motion for leave to file a reply in support of its motion for relief

remand, "interest on loans taken out to restore the property *can be* a reasonable cost of repair." Id. at ¶46. (Emphasis added.)

**{¶ 17}** Plaintiff's first loan was obtained from Markle Bank in the form of a $1,000,000 note which was later increased (in March 2004) to $2,500,000. Following the first damages trial, the magistrate recommended an award of $949,300 for interest accrued on that loan from its inception to February 11, 2009, the date of decision.[5] Plaintiff is now seeking an award of $952,561 for interest that has continued to accrue on the loan through the date of the second trial, plus $74 per day thereafter. Further, plaintiff seeks an award of $260,000, for interest that his brother would have earned on a $1.9 million certificate of deposit (CD) that was used to pay down the principal of this loan.

**{¶ 18}** Plaintiff has submitted evidence detailing the interest and principal payments made over time and the various interest rates that have been applied. Defendant has not refuted those amounts, but rather the extent to which the proceeds were used for restoration. What is problematic for the court is that plaintiff chose not just to restore the facility to a condition suitable for sale, but to reopen the RecPlex business and to incur continued expenses for that purpose. It is undisputed that the business was not profitable for at least the two years before the flood, and generated only $22,099 in net income in the months prior to the July 2003 flood. (Defendant's Exhibits K, L, M, N, and Q.) It is apparent from the evidence that plaintiff eventually began to struggle to repay the loan, to the extent that the bank allowed "interest only" payments for a period of time, charged frequent late fees, and eventually cashed the CD that plaintiff's brother had pledged to secure the loan.

**{¶ 19}** Upon review of the evidence submitted, the court is unable to reconcile what amount of interest is attributable to proceeds of the loan used solely for restoration, what amount is attributable to plaintiff's efforts to keep the business in operation, and what amount is attributable to plaintiff's inability to make timely

---

from judgment, and plaintiff's October 13, 2010 motion to strike defendant's reply memorandum are DENIED as moot.

[5]As noted previously, the court modified the magistrate's recommendation to disallow an award for interest costs; it did not comment on the reasonableness of the amount or the manner in which it was calculated.

payments on the loan.  In short, the court is forced to conclude that the total amount of interest sought for repayment of this loan is unreasonable, and that defendant cannot be held liable for interest incurred as a result of plaintiff's decision to reopen a non-profitable business, or his inability to meet his obligations.  Therefore, based upon plaintiff's failure of proof, and his lack of credibility on this issue, the court shall award only the amount of interest paid through July 9, 2007, when regular payments were being made.  Using the figures contained in Plaintiff's Exhibit 13, the court calculates that amount to be $520,603.44.[6]  For these same reasons, no award shall be granted for the $260,000 claimed for reimbursement of interest owed to plaintiff's brother.

{¶ 20} As to the remaining loans, the court also finds that plaintiff failed to prove by a preponderance of the evidence that the proceeds of the additional loans were utilized for  restoration efforts, or that the amount of the loans was reasonable as compared to the cost of restoration or the diminution of the property's market value.  Therefore, no award shall be granted for the claimed interest on the additional loans.

## III.  LOSS OF USE OF THE RECPLEX

{¶ 21} According to the testimony, plaintiff calculated this element of damages by relying upon a net income figure of $56,164 for the year 2008, when he asserts that the RecPlex had returned to a level of operation comparable to pre-flood business conditions.  Based upon audited financial statements, plaintiff then applied that figure in calculating the net income that the RecPlex would have earned in the years from 2003 through 2007, but for the flood.  For example, plaintiff contends that for the four months of the last quarter of 2003, the RecPlex should have received a net revenue of $14,041 ($56,164/4).  However, because the business lost $49,000, plaintiff calculated the  loss of use for those months as $63,041 ($14,041 + $49,000).  The same method was used to calculate a loss of use for the years 2004 through 2007.  The total amount sought for this element of damages is $348,198.   All of the calculations and supporting documentation are set forth in Plaintiff's Exhibit 14.

---

[6]The calculation began at $13,020.83 paid on April 3, 2004, and ended with the $13,937.52 paid on July 9, 2007.

**{¶ 22}** Defendant counters that plaintiff is not entitled to any loss-of-use damages, again based largely upon its lack of standing arguments. Those arguments were previously addressed and rejected. Defendant further contends that, based upon the reported net operating losses for the RecPlex in the years prior to and following the flood (Defendant's Exhibits K, L, M, N, and Q), plaintiff has not suffered any compensable loss of use.

**{¶ 23}** Neither party has offered any case law in support of the method used in the evaluation of these damages. However, it has consistently been held that: "'[t]he value of the use of the property is measured according to the purpose for which the property is held. If the injured property is held for rental purposes, then the "value of the use" is the diminution in the property's rental value.' *Reeser v. Weaver Bros., Inc.* (1992), 78 Ohio App.3d 681, 686, 605 N.E.2d 1271, citing *Klein v. Garrison* (1951), 91 Ohio App. 418, 420-427, 108 N.E.2d 381. Loss or decrease in rental value would not be a reliable basis upon which to estimate damages if the property is not held for rental purposes, rather, *loss of the value of use would be the measure of damages.* Id." *Weber v. Obuch,* Medina App. No. C.A.05CA0048-M, 2005-Ohio- 6993, ¶25. (Emphasis added.) The case law provides no guidance as to how to determine a value of use for a multi-dimensional business such as the RecPlex. Nonetheless, Ohio law makes clear that a party cannot recover purely speculative damages. Id. at ¶28. (Additional citations omitted.)

**{¶ 24}** Based upon the evidence and the available case law, the court finds that plaintiff's loss of revenue calculations are a purely speculative means upon which to base an award for any loss of value of use. In light of the minimal profitability of the business, and as a result of the lack of credible evidence, the court concludes that plaintiff failed to prove by a preponderance of the evidence that he sustained a compensable loss of use of the property. Therefore, no award shall be granted for this component of plaintiff's alleged damages.

**{¶ 25}** In conclusion, the court finds that plaintiff is entitled to damages in the amount of $2,613,508.52, consisting of $2,092,905.08 ($1,536,282.61 + $5,503.47 + $551,119) for repair and restoration, and $520,603.44 for interest costs. Judgment shall be entered in that amount plus $25 for reimbursement of the filing fee.

# Court of Claims of Ohio

The Ohio Judicial Center
65 South Front Street, Third Floor
Columbus, OH 43215
614.387.9800 or 1.800.824.8263
www.cco.state.oh.us

CASE LEASING & RENTAL, INC.

    Plaintiff

    v.

OHIO DEPARTMENT OF NATURAL
RESOURCES

    Defendant

    Case No. 2005-08034

Judge Joseph T. Clark

JUDGMENT ENTRY

This case was tried to the court on the issue of plaintiff's damages. The court has considered the evidence and, for the reasons set forth in the decision filed concurrently herewith, judgment is rendered in favor of plaintiff in the amount of $2,613,533.52, which includes the filing fee paid by plaintiff. Court costs are assessed against defendant. The clerk shall serve upon all parties notice of this judgment and its date of entry upon the journal.

_____
JOSEPH T. CLARK

Judge

cc:

Jeremy M. Grayem
250 West Street, 7th Floor
Columbus, Ohio 43215

Kevin L. Murch
Matthew T. Green
Stephen P. Samuels
250 West Street
Columbus, Ohio 43215

Randall W. Knutti
Assistant Attorney General
150 East Gay Street, 18th Floor
Columbus, Ohio 43215-3130

LH/cmd
Filed March 3, 2011
To S.C. reporter March 22, 2011