**HORRISBERGER et al., Appellees,**

v.

**MOHLMASTER et al., Appellants.**

[Cite as *Horrisberger v. Mohlmaster* (1995), 102 Ohio App.3d 494.]

Court of Appeals of Ohio,
Ninth District, Wayne County.

No. 2904.

Decided April 12, 1995.

*David C. Engle,* for appellees.

*David P. Bertsch,* for appellants.

REECE, Judge.

Defendants-appellants, Ralph and Paul Mohlmaster, appeal from a jury verdict in favor of the plaintiffs-appellees, Oscar and Eunice Horrisberger, on the plaintiffs' claim for unreasonable interference with surface water flow. Upon review, we vacate the judgment against Paul Mohlmaster, reverse the judgment against Ralph Mohlmaster, and remand the cause against Ralph Mohlmaster for a new trial on damages only.

Since 1977, Ralph Mohlmaster has resided on a parcel of property on the west side of State Route 585 in Marshallville.[1] The plaintiffs own a sixty-acre farm located on the east side of Route 585, immediately opposite the Mohlmaster property, where the plaintiffs have resided since 1963. This action arose from a surface water dispute between the parties.

The natural grade of the plaintiffs' farmland slopes toward Route 585 and the Mohlmaster property. The plaintiffs' surface water flows along a natural depression in the farmland toward a central point along Route 585. The flow of the surface water is assisted by an eight-inch field tile line located two feet below the surface of the natural depression. The plaintiffs' field tile line discharges the water it collects into a highway culvert built underneath Route 585. The culvert carries the water onto the Mohlmaster property. In addition to the field tile line, the plaintiffs also have a four-inch pipe connected to a drain in their basement that empties into the Route 585 culvert.

Prior to 1985, water flowing through the Route 585 culvert emptied into an open ditch, four to six feet deep, that ran across the Mohlmaster property. The ditch apparently had been created over time by the natural course of the water. Sometime in 1985 or 1986, Ralph Mohlmaster decided to fill the ditch. Ralph laid a twelve-inch plastic drainage pipe in the bottom of the ditch and filled the ditch with dirt until it was level with the surrounding land. Ralph placed the inlet end

---

1. Ralph Mohlmaster purchased the property in 1977. Ralph transferred title to his son, Paul Mohlmaster, in October 1993, but Ralph continues to reside on the property.

of the twelve-inch pipe near the Route 585 culvert. In order to prevent sediment from blocking the pipe inlet, Ralph elevated the pipe inlet at an upward angle. This placed the pipe inlet at a higher elevation than the plaintiffs' field tile outlet on the other side of the culvert. Ralph also constructed an overflow basin around the pipe inlet to contain water during periods of excessive flow.

After Ralph replaced the open ditch with the twelve-inch pipe, the plaintiffs began to experience drainage problems. Because Ralph installed the pipe inlet at a higher elevation than the plaintiffs' field tile outlet, the field tile outlet was frequently under standing water. As a result, water would back up in the plaintiffs' field tile line instead of steadily discharging into the Route 585 culvert as it had done when the culvert drained into the open ditch. During heavy rains, the backed-up water and reduced flow allegedly caused "blow-outs" in the plaintiffs' field tile line, whereby increased pressure in the tile line would force water to blow out through the ground, leaving holes two to three feet deep and up to six feet across on the plaintiffs' property. The plaintiffs also experienced flooding in their basement and problems with their septic system.

In response to these problems, the plaintiffs brought this action seeking to recover compensatory and punitive damages for unreasonable interference with their surface water flow. Ralph Mohlmaster was the original named defendant. When Ralph transferred title to his property to his son Paul Mohlmaster, the trial court allowed the plaintiffs to amend their complaint and name Paul as an additional defendant. The case was tried to a jury on May 2, 1994. The jury found in favor of the plaintiffs and awarded $4,500 in compensatory damages. The jury also found that the plaintiffs were entitled to punitive damages and attorney fees. The trial court awarded $500 in punitive damages and $5,000 in attorney fees and entered judgment against Ralph and Paul, jointly and severally, for $10,000. Ralph and Paul appeal, raising three assignments of error.

## I

In the third assignment of error, Paul contends that the trial court erred in entering judgment against him on the jury verdict. At oral argument, counsel for the plaintiffs agreed that the trial court should not have entered judgment against Paul on the jury verdict. Therefore, upon the plaintiffs' consent, the third assignment of error is sustained, and the judgment against Paul Mohlmaster is vacated.

## II

The remaining two assignments of error concern the judgment against Ralph Mohlmaster. In the first assignment of error, Ralph contends that the plaintiffs presented "no competent evidence upon which an award of compensatory dam-

ages could be made." In the second assignment of error, Ralph contends that the plaintiffs did not present clear and convincing evidence of malice to support an award of punitive damages. Although Ralph's assignments of error address only the issue of damages, we find it appropriate to begin our review with the standard of liability for interference with surface water flow.

In *McGlashan v. Spade Rockledge Corp.* (1980), 62 Ohio St.2d 55, 16 O.O.3d 41, 402 N.E.2d 1196, syllabus, the Ohio Supreme Court adopted a reasonable use rule for surface water disputes:

"In resolving surface water disputes, courts of this state will apply a reasonable-use rule under which a possessor of land is not unqualifiedly privileged to deal with surface water as he pleases, nor absolutely prohibited from interfering with the natural flow of surface waters to the detriment of others. Each possessor is legally privileged to make a reasonable use of his land, even though the flow of surface waters is altered thereby and causes some harm to others, and the possessor incurs liability only when his harmful interference with the flow of surface water is unreasonable. * * * "

Under the reasonable use rule, unless the defendant's conduct is unlawful or subject to strict liability, the defendant's liability for interference with surface water flow is controlled by principles of common-law negligence, regardless of whether the plaintiff's cause of action sounds in nuisance or trespass. *Ogle v. Kelly* (1993), 90 Ohio App.3d 392, 396, 629 N.E.2d 495, 497–498; *Franklin v. Hunter* (May 16, 1984), Allen App. No. 1–82–69, unreported, 1984 WL 7971. In this regard, the plaintiff must show that the defendant owed a duty of care, that the defendant breached the duty of care, and that the defendant's breach of duty was the direct and proximate cause of the plaintiff's injuries. According to the Supreme Court, a breach of duty can be found only if the defendant's interference with surface water flow is unreasonable, which is determined "by balancing the gravity of the harm caused by the interference against the utility of the [defendant's] conduct." *McGlashan,* 62 Ohio St.2d at 60, 16 O.O.3d at 44, 402 N.E.2d at 1200, adopting 4 Restatement of the Law 2d, Torts (1979) 108–142, Sections 822–831.

In this case, Ralph does not dispute that he interfered with the plaintiffs' surface water flow. In doing so, Ralph clearly owed the plaintiffs a duty to act reasonably. By rendering a general verdict in favor of the plaintiffs, the jury necessarily concluded that Ralph did not act reasonably and, thus, breached his duty of care. Ralph has not challenged this aspect of the jury's verdict. Rather, Ralph claims that the plaintiffs failed to present competent evidence from which the jury could have properly found causation and reasonably calculated damages.

■ At trial, the plaintiffs alleged three injuries: (1) problems with their septic system; (2) flooding in their basement; and (3) blow-outs in their field tiles. The plaintiffs, however, did not introduce any evidence establishing that the problems with their septic system and the flooding in their basement were the direct and proximate result of Ralph's interference with their surface water flow. In fact, the plaintiffs' own expert acknowledged that given the elevation of the plaintiffs' house, surface water accumulating in the Route 585 culvert could not have backed up into the septic system. Thus, in the absence of competent evidence of causation, the jury could not have properly found Ralph liable for the injuries to the plaintiffs' septic system and basement.

Nevertheless, the record does contain competent, credible evidence from which the jury could have properly found that the field tile blow-outs were the direct and proximate result of Ralph's interference with the plaintiffs' surface water flow. The plaintiffs' expert testified that by placing the twelve-inch inlet pipe at a higher elevation than the plaintiffs' field tile outlet, Ralph caused standing water to accumulate in the Route 585 culvert. Because of standing water in the culvert, surface water in the plaintiffs' field tile line was backing up, slowing the overall flow rate. The slower flow rate deposited more sediment in the field tile line, which eventually restricted the diameter of the flow. The plaintiffs' expert concluded that during heavy rains, the restricted diameter of the flow would force water to the surface, blowing out holes in the ground. Based on this testimony, the jury could have properly found causation with respect to the field tile blow-outs. Therefore, we affirm the jury's verdict as to Ralph's liability for damages resulting from the field tile blow-outs.

The remaining questions then concern the plaintiffs' proof of damages. In their proposed jury instructions, the plaintiffs correctly classified the field tile blow-outs as a temporary injury to real property. The plaintiffs also identified the proper measure of damages for a temporary injury to real property. What the plaintiffs failed to do, however, was present the type of evidence necessary to sustain a verdict under that measure of damages.

■ For a temporary injury to real property, a plaintiff is entitled to recover (1) reasonable restoration costs, *Reeser v. Weaver Bros., Inc.* (1992), 78 Ohio App.3d 681, 691–692, 605 N.E.2d 1271, 1277–1278; (2) compensation for the loss of the use of the property between the time of the injury and the restoration, *Henderson v. Spring Run Allotment* (1994), 99 Ohio App.3d 633, 651 N.E.2d 489; and (3) damages for personal annoyance and discomfort if the plaintiff is an occupant of the property, *Reeser* at 692–694, 605 N.E.2d at 1278–1280. See, also, 4 Restatement of the Law 2d, Torts (1979) 544, Section 929. Each of these elements of recovery represents a separate and distinct type of damage, and the absence of one does not preclude recovery for the others. See *Henderson* at 641,

651 N.E.2d at 495; citing *Norwood v. Sheen* (1933), 126 Ohio St. 482, 493–495, 186 N.E. 102, 106–107. Accordingly, we have reviewed the sufficiency of the plaintiffs' evidence for each element.

First, we find that the plaintiffs did not introduce any evidence relating to their loss from not being able to use the property injured by the field tile blow-outs. Second, the plaintiffs did not present any evidence of annoyance or discomfort that could be attributed directly to the field tile blow-outs. In the absence of competent evidence on these two elements of recovery, the jury could not have properly awarded damages for loss of the use of the property or for personal annoyance and discomfort.

■ With respect to damages for restoration of their property, the plaintiffs were required to present proof of restoration costs and proof of the diminution in the fair market value of the property. *Reeser*, 78 Ohio App.3d at 692, 605 N.E.2d at 1278. As explained by the *Reeser* court, a plaintiff's recovery of reasonable restoration costs is "circumscribed by the limitation that the recoverable restoration cost[s] cannot exceed the difference between the pre-injury and post-injury fair market value of the real property." *Id.*, restating the general rule set forth in *Ohio Collieries Co. v. Cocke* (1923), 107 Ohio St. 238, 140 N.E. 356, paragraph five of the syllabus. In other words, if restoration costs exceed the diminution in the property's fair market value, then diminution in fair market value becomes the proper measure of restoration damages. Therefore, a plaintiff seeking to recover restoration damages may not rely solely on evidence of restoration costs to meet his burden of proof. Rather, the plaintiff must introduce evidence of restoration costs *and* evidence of the pre-injury and post-injury fair market value of the injured property. In the absence of market value evidence, the plaintiff generally cannot recover damages for restoration of the injured property. *Reeser* at 692, 605 N.E.2d at 1278; see, also, the discussion in *Reeser* at 686–691, 605 N.E.2d at 1274–1278.

■■ The plaintiffs in this case did not introduce any evidence of the pre-injury or post-injury fair market value of their property. Furthermore, we have serious concerns about the scarcity of evidence relating to the plaintiffs' expected restoration costs. Consequently, we are compelled to conclude that the jury's award of compensatory damages was not supported by competent evidence and, therefore, was against the manifest weight of the evidence. See, generally, *Kromer v. Island Recreation Assn., Inc.* (1992), 82 Ohio App.3d 787, 791–792, 613

N.E.2d 664, 666–667. In the absence of competent evidence of compensatory damages, the jury could not have properly awarded punitive damages.[2]

Upon a finding that the jury's award of compensatory damages was against the manifest weight of the evidence, Ralph asks this court to enter judgment in his favor as a matter of law. We must deny Ralph's request.

When an appellate court reverses on the manifest weight of the evidence in a case in which a *jury* was the trier of fact, the appellate court "[m]ay not enter final judgment on the weight of the evidence but must remand the cause for a new trial." *Hanna v. Wagner* (1974), 39 Ohio St.2d 64, 66, 68 O.O.2d 37, 38, 313 N.E.2d 842, 843. Having affirmed the jury's verdict with respect to Ralph's liability for damages from the field tile blow-outs, we do not need to remand the cause for a new trial on liability. However, having reversed the jury's award of compensatory damages on the manifest weight of the evidence, we must remand the cause for a new trial on damages. The first and second assignments of error are sustained to the extent they are consistent with this opinion.

### III

The judgment against Paul Mohlmaster is vacated, and the judgment against Ralph Mohlmaster is reversed, with the cause against Ralph Mohlmaster being remanded for a new trial on damages only.

*Judgment accordingly.*

QUILLIN, P.J., and SLABY, J., concur.

---

2. In reaching this conclusion, we express no opinion on the sufficiency of the plaintiffs' evidence as to punitive damages. Rather, we reverse the award of punitive damages solely upon the general rule of law that punitive damages may not be awarded in the absence of compensatory damages. See *Cabe v. Lunich* (1994), 70 Ohio St.3d 598, 603, 640 N.E.2d 159, 163–164.