JOURNAL ENTRY AND OPINION
Appellant Peter Richards appeals from a Probate Court judgment overruling his motion to surcharge appellee Chester Gordon, Executor of the Estate of Jane M. Richards, Deceased, for certain matters in the administration of the Estate. Appellant, one of two heirs to the Estate, claims the executor engaged in self dealing; neglected the repair of certain real estate; and sold that property below its value without regard to a contract with appellant. Appellant also contends that the trial court erred in excluding evidence and in allowing executor commissions as well as attorney fees for the same work. We find no reversible error and affirm.
Jane M. Richards died testate on June 30, 1992, as the result of an automobile accident in Ireland. Her will designated her two adult children, appellant Peter M. Richards and Susan Romell, as her equal beneficiaries. Appellee Chester E. Gordon was named executor in the will without bond. The Probate Court probated the will on July 7, 1992, and appointed Gordon as executor. He also served as attorney to the Estate. In the process of administering the Estate, appellee filed three partial accounts and a final and distributive account. Appellee contends he has completed the administration of the Estate except for the determination by the court of his proper attorney fees. Appellant filed exceptions or objections to the inventory and the accounts, as well as a motion to surcharge the executor and objections to appellee's motion for attorney fees.
The Estate had an inventory value of $316,722.33. There were enough liquid assets to pay all debts, taxes and costs of administration. All the real estate and tangible personalty at issue were available for distribution in kind.
Mrs. Romell died during the administration of the Estate. Her husband, as surviving spouse and executor of her estate, was duly notified of all proceedings in the court below and in this Court, but has not appeared or pled in any way.
Three items of property essentially form the basis for the allegations of misconduct by the appellee against the executor.
One of the assets was a 1990 Honda Accord automobile with about 5,900 miles on it at the time of decedent's death. It was inventoried with a book value of $11,500. No objection to this inventory value was raised. The Honda was garaged at 1088 Summit Avenue, Lakewood, Ohio, decedent's residence at the time of her death. Within two weeks of opening the Estate, the sole beneficiaries, appellant and his sister, Mrs. Romell, agreed in writing that her son, George Romell, could remain in the home and would have use of the Honda "which is covered by all necessary insurance." (Ex. 2). After more than two years, during which time the beneficiaries negotiated between themselves, they agreed that appellant would receive the car as a distribution in kind. In September 1994, title to the car was transferred to appellant. On his third partial account the appellee showed this distribution in kind with the inventory value of $11,500.
Appellant argued that, due to the passage of two years and additional mileage, the car was no longer worth $11,500. Appellant had prepared a written agreement based on a $7,700 price, but appellee never signed it. Appellant did not raise the issue of the car's value when he personally picked up the certificate of title from appellee.
The second group of assets at issue is the furniture and other household effects in the decedent's residence on Summit Avenue. Appellee testified that he did not examine these items, have them valued, prepare an itemized list of them or include them on the inventory he filed with the court. In the same agreement referred to with respect to the Honda (Ex. 2), appellant and his sister, Mrs. Romell, agreed that Mrs. Romell's son would live in the Summit Avenue house.
The evidence indicated that appellee did not believe inventorying the property in the Summit Avenue house was necessary as it was not indicated that anything of value was in the home and he was dealing with two adult children who were represented by attorneys. (Tr. at 34-35). He explained that he agreed with their attorney at the time, Mr. Gonda, that the two beneficiaries would handle dividing the personal property. (Tr. at 48). There were many written and oral communications between the "beneficiaries and their attorneys over division of these household items. Ultimately, the appellee was notified by the attorneys for each beneficiary that the matter had been resolved by them (Ex. A).
The third asset in dispute is a residential property at 1591 Center Road, Avon, Ohio. The house is a century home, located on about three acres of land. The decedent rented it out for many years to Arnold Savage and his mother on an oral month-to-month tenancy. Rent was $250 per month at the time of her death. Savage did some of the repair work and offset any out-of-pocket costs against the rent. Major repairs were paid for by Mrs. Richards. Appellant contends appellee should have seen to major repairs after storm damage and sold the property to appellant rather than a third party.
About two months after the Estate was opened, a severe storm damaged the roof, chimney and gutters of the house. There was casualty insurance in place that would have covered some of the cost of repair. Appellee was aware of the storm damage. He testified he did not go to the premises but had communications about it with the tenant. He did not have any repairs made nor did he file any insurance claims. Appellant testified he became aware of the damage over a year after it happened. In the summer of 1993, Mrs. Romell did get estimates ranging from $3,349 to about $13,300 for the roof repair (Exs. 18 and 19). None of that work was done. During this time there were ongoing discussions between the appellant and his sister as to which of them would take the Center Road property. The tenant moved out in 1994 alleging the poor physical condition of the property as his reason. The property was then vacant until sold in late 1996 by the Estate.
Appellant's surcharge motion sought lost rent from the time the tenant moved out to the time of sale. Appellant also claimed that the appellee is personally responsible for the cost of repair due to the storm damage, both claims leading to his surcharge motion. The second aspect of the Center Road property issue concerns its sale. By summer of 1994, appellant and Mrs. Romell had apparently decided that appellant would buy the property from the Estate for $109,000.00, its inventory value being $47,500.00. Appellant's attorney prepared a contract for the sale and the appellee signed it. (Ex. 9). It provided that appellant would accept the property "as is." Shortly after executing the contract, appellant actually went to the Center Road property and viewed its physical condition though he previously knew there had been some damage. He then requested that the appellee pay for the restoration of the property out of his own funds.
Appellant did pay $719.00 for some repair he deemed critical. This was deducted from his executor fees. Attempts to settle the dispute were unsuccessful. In a letter from appellee dated October 20, 1995, appellant was given to November 6, 1995, to inform the appellee whether he was still interested in purchasing the property or it would be put on the open market. (Ex. 21-C). In November 1996, appellee entered into a contract to sell the property for $110,000.00 to an outside party. (Ex. 12). Thereafter, on December 19, 1996, appellant asserted he would still pay $109,000.00 for it and not pursue his damage claim. Nevertheless, the sale to the outside party was completed with the record being filed the next day on December 20, 1996. At trial, appellant offered the testimony of an appraiser that the Center Road property was worth $188,000.00 at the time it was sold.
In order to close the Estate, appellee filed his application for attorney fees and his final distributive account. Appellant filed objections to the account, objected to attorney fees and moved to surcharge appellee. These matters were heard by a Magistrate on September 24 and 25, 1997. The Magistrate filed his report and recommendations on December 17, 1997. The Magistrate found no bases to surcharge the appellee for neglect or positive misconduct, declined jurisdiction to challenge the breach-of-contract claim respecting the Center Road property and reduced the attorney fees requested.
Timely objections were filed by appellant to the report which were overruled by the Probate Court. The court thereafter filed an order adopting the findings and conclusions of the Magistrate on April 20, 1998, from which timely notice of appeal was taken to this Court.
We will discuss appellant's assignments of error in the order asserted and together where appropriate to the discussion.
 I. WHETHER THE COURT BELOW ERRED WHEN IT FOUND NO CAUSE TO SURCHARGE THE EXECUTOR FOR HIS SELF-DEALING WITH RESPECT TO THE CENTER ROAD PROPERTY.
 V. WHETHER THE COURT BELOW ERRED WHEN IT FOUND NO CAUSE TO SURCHARGE THE EXECUTOR FOR HIS FAILURE TO MAINTAIN THE CENTER ROAD PROPERTY.
We initially note that an appellate court reviews Probate Court surcharge determinations under an abuse of discretion standard.Whitaker v. Estate of Whitaker (1995), 105 Ohio App.3d 46, 55;In re Testamentary Trust v. Hamm (1997), 124 Ohio App.3d 683,689. Abuse of discretion "implies an unreasonable, arbitrary, or unconscionable attitude on the part of the court." Quonset Hut,Inc. v. Ford Motor Co. (1997), 80 Ohio St.3d 46, 47.
In these assignments of error, appellant essentially argues that appellee breached his fiduciary duty by manipulating the sale of the Center Road property to avoid the appellant's claim that appellee was personally liable for the repair of' the storm damage to the house. The argument hinges on an alleged agreement by appellee that he would pay for the repair. Appellee submits and the trial court concluded that there was no such agreement on appellee's part to make the repairs personally. We find nothing in the record to support the contention that appellee agreed to accept monetary responsibility for the damage to the Center Road property. Although appellant testified at trial that such an agreement existed, the appellee testified he entered into no such agreement. Furthermore, the record provides no other support to suggest that appellee should be held liable for the storm repairs.
First, there is no evidence of any monetary damages. It is true appellee might have filed an insurance claim on behalf of the Estate, but there is no evidence of coverage, exclusions, deductibles or other matters that would bear in any way on the success of such a claim.
Second, the cost estimates that appellant offered (Exs. 18 and 19) on their face do not show how much of the work was for storm damage and what was for general disrepair. Nor is there evidence as to the condition of the roof and related parts of the house prior to the storm in September 1992.
Third, there was no evidence as to the diminution, if any, in the value of the property as a result of the physical damage. Such evidence is required in a case seeking recovery of damages to real estate. See Horrisberger v. Mohlmaster (1995), 102 Ohio App.3d 494,500. The tenant Savage remained on the premises for more than two years after the storm while the appellant and his sister, Mrs. Romell, were discussing who would get this property (Ex. B) and under what circumstances. It would be unreasonable to expect appellee to spend up to $13,400.00 when it might not be necessary or desirable and might not increase the value of the property.
We fail to see that the self-dealing fiduciary cases cited by appellant have any application to the dispute about the Center Road property. Nor do we see any benefit to appellee resulting from the way this matter was resolved.
Since there was no agreement or other basis to charge appellee with the monetary responsibility for the cost of the storm damage to the Center Road property, it was well within the trial court's discretion to find there was no basis to surcharge the appellee.
Regarding appellant's contention that the appellee's failure to maintain the Center Road property resulted in damages to the Estate, this was not raised in the appellant's motion for surcharge and was therefore properly not addressed by the Probate Court. Appellant also did not raise in the motion to surcharge that the Estate was harmed by the appellee's selling the property below the fair market value and therefore no self dealing can be found in this respect.
Assignments of Error I and V are overruled.
 II. WHETHER THE COURT BELOW ERRED WHEN IT FOUND NO CAUSE TO SURCHARGE THE EXECUTOR FOR HIS SALE OF THE CENTER ROAD PROPERTY TO AVON COMM. CO., TO THE INJURY OF THE HEIR AND ESTATE OF WHICH HE WAS A FIDUCIARY.
 III. WHETHER THE COURT BELOW ERRED WHEN IT FOUND NO CAUSE TO SURCHARGE THE EXECUTOR FOR HIS SALE OF THE CENTER ROAD PROPERTY TO AVON COMM. CO. ON THE BASIS THAT ANY ACTION REGARDING THE CENTER ROAD PROPERTY WAS WITHIN THE EXCLUSIVE JURISDICTION OF THE COMMON PLEAS COURT, GENERAL DIVISION.
These assignments of error will be addressed together as they both deal with the alleged breach of the contract between appellant and appellee regarding the sale of the Center Road property. In his second assignment of error the appellant argues that the Probate Court erred in not surcharging the appellee for failure to sell the Center Road house to him pursuant to their contract and that his selling of the property to a third party below the fair market value also harmed the Estate. In his third assignment of error, appellant argues that the Probate Court erred in finding it had no jurisdiction over the contract dispute regarding the Center Road property.
"Since the probate court is a court of limited jurisdiction, probate proceedings are restricted to those actions permitted by statute and by the Constitution." State ex rel. Lipinski v.Cuyahoga County Common Pleas Court, Probate Division (1995),74 Ohio St.3d 19, 22. The Ohio Supreme Court in Zuendel v. Zuendel
(1992), 63 Ohio St.3d 733, confronted a similar situation in which the executor entered into a contract with the heirs. In that case the executor entered into a contract with the heirs to distribute a certain percentage of the Estate to include two of the decedent's children. This was to prevent a will-contest action later. However, one of the children filed a motion with the probate court to compel the executor to distribute the Estate in accordance with the terms of the will. The executor and other children of the agreement filed a declaratory action with the probate court to determine the enforceability of the earlier agreement. The probate court dismissed the matter stating, "[t]he contractual basis of the dispute between the parties prohibits this [c]ourt from asserting jurisdiction over the matter." Id. at 734. The court of appeals affirmed the trial court's judgment. The Ohio Supreme Court affirmed the court of appeals, stating in part:
 Assuming the validity of the agreement, for sake of analysis, the agreement between Stephen and Mark and David Zuendel is not directly related to the administration of the testator's estate. The March 1989 agreement has no bearing upon the duties of the executor. The agreement was merely an attempt by Stephen, Mark and David to contractually provide for a division of the estate different from that provided in the will. Absent a successful will-contest action, the executor's duties are to administer the estate and distribute the assets in accordance with the terms of the will. The General Assembly has specifically provided what matters are within the realm of the probate court's jurisdiction. Clearly, the March 1989 agreement is not one of those matters.
 Accordingly, we find that a probate court does not have jurisdiction to render a declaratory judgment as to the validity or enforceability of a contract providing for a division of the testator's estate different from that provided in the will. Such contracts are not directly related to the administration of the testator's estate. Therefore, we affirm the judgment of the court of appeals and remand the cause to the probate court with an order directing the executor to disregard the March 1989 agreement and proceed with the administration of the estate in accordance with the terms of the will. The proper forum to test the validity and enforceability of the agreement is in the general division of the common pleas court.
Id. at 737.
In the case herein, the terms of the will regarding the disposition of real property simply stated:
 I make nominate and appoint Chester E. Gordon to be the executor of this my Last Will and Testament hereby authorizing and empowering my said executor to compound, compromise, settle and adjust all claims and demands in favor of or against my estate; to manage and operate any real property I may own during the administration of my estate; to sell at private or public sale at such prices and upon such terms of credit or otherwise as my said executor may deem best, the whole or any part of my real or personal property, and to execute, acknowledge and deliver deeds and other proper instruments of conveyance thereof to the purchaser or purchasers. I request that no bond be required of my said executor.
Based on this provision, the appellee was given complete discretion to whom and for what price the real estate should be sold. Nothing obligated him pursuant to the will to sell the property to the appellant. As stated by the Ohio Supreme Court above, the Probate Court has no jurisdiction to determine the administration of the Estate pursuant to a contract differently from what the will directs. Zuendel, supra. Therefore, any argument regarding the executor's breach of contract should be filed in the general division of the court of common pleas.
Regarding the appellant's argument that the appellee sold the property for less than the fair market value, the magistrate noted that this was not presented in the appellant's motion for surcharge; therefore any argument regarding this alleged deficiency is waived.
Appellant's Assignments of Error II and III are overruled.
 IV. WHETHER THE COURT BELOW ERRED WHEN IT DENIED ADMISSION INTO EVIDENCE OF THE APPRAISAL OF THE CENTER ROAD PROPERTY BY ROSS ELLIS AS IRRELEVANT.
As part of his case, appellant presented the testimony of Mr. Ross Ellis, a real estate appraiser. At the beginning of his testimony, an objection was entered by appellee on the grounds of relevancy. The court acknowledged a continuing objection but reserved ruling on the objection and permitted him to testify. In his decision, the magistrate excluded the appraiser's testimony as irrelevant. (Magistrate's Report 13-14)
As we stated in Nielsen v. Meeker (1996), 112 Ohio App.3d 448, on reviewing the admission of evidence:
 The trial court is vested with the sound discretion to rule on the admission or exclusion of evidence based upon relevance, and these rulings will not be overturned absent an abuse of discretion. Renfro v. Black (1990), 52 Ohio St.3d 27. 556 N.E.2d 150. The term "abuse of discretion" connotes more than an error of law or judgment. It implies that the court's attitude is unreasonable, arbitrary or unconscionable. Blakemore v. Blakemore (1983), 5 Ohio St.3d 217, 219, 450 N.E.2d 1140, 1142.
Id. at 450.
The trial court did not abuse its discretion in excluding the appraiser's testimony. In the appellant's motion to surcharge, he did not argue that the Estate was harmed by the appellee's sale of the property below the alleged current fair market value. As the magistrate found:
 It is not relevant to the facts herein based on the estate's inventory and appraisal, the offer to purchase by Plaintiff which was made as to his own appraisal and no objection by the other beneficiary, and the offer accepted by Defendant which was in excess of the estate's appraisal and that of Plaintiff.
(Magistrate's Report at 14). As stated in R.C. 2115.02, "the inventory shall set forth values as of the date of death of the decedent." The court appointed appraiser, appraised the property eight months after the decedent's death and found it to be worth $47,500. The fact that the property several years after the death of the decedent may be worth more than the earlier appraisals is irrelevant in terms of the appellee's duty to appraise and inventory the property as of the date of death. Any damages that were incurred by selling the property to a third party, would be personal damages to the appellant. That is, by not having the property sold to him, he missed out on any possible profit he could have made by selling the property himself for the $188,000 appraised value.
Further, since the appellee sold the property in excess of the amount that appellant was offering and well above the amount of the Estate's appraised value, there was no harm to the Estate. The only offers to purchase the property came from the final purchaser and the appellant. If appellant's offer would have been accepted, the Estate would have received $1,000 dollars less. There is no evidence that there were any other interested buyers who would have purchased the property for more than this amount.
We see no basis for concluding that the trial court abused its discretion by excluding the Ellis appraisal.
Appellant's Assignment of Error IV is overruled.
 VI. WHETHER THE COURT BELOW ERRED IN ITS ALLOWANCE OF DEFENDANT'S EXECUTOR COMMISSION IN FULL AND ATTORNEY FEES IN PART WHEN DEFENDANT CHESTER GORDON FAILED TO FAITHFULLY DISCHARGE HIS DUAL RESPONSIBILITIES TO THE BENEFICIARIES AND THE COURT.
In this portion of his brief, appellant argues the appellee should receive neither the statutory executor's fee nor any attorney fees. The court awarded executor's fees but reduced the attorney fees request substantially since the executor and attorney were one and the same.
Appellee alleges the appellant failed to properly administer the household effects in the Summit Avenue residence including not inventorying them or taking physical control of them. The appellee acknowledged following his probate practice of forty years, of not including any tangible personal property of the decedent (except her car) in the Estate inventory or on later reports of newly discovered assets.
He had provided the beneficiaries with a copy of the inventory at the time of its preparation. The appellant testified he and his sister had found some computational errors and advised the appellee of them. However, appellant knew that the household goods were not on the formal inventory, but he raised no objection thereto until five years later.
In any event, both beneficiaries were represented by counsel almost from the beginning of the administration of this Estate. Exhibit 2, the agreement regarding Mrs. Rommell's son living in the decedent's home and driving the Honda, was received by appellee from their attorney within two weeks of the first conference about the Estate. The beneficiaries were represented by one attorney or another or by separate counsel at various times thereafter. Appellee stated he was aware of much disagreement between the parties as to how to divide the numerous household items. Nevertheless, he was assured by Exhibit 2 that he did not need to take actual possession of the decedent's residence and its contents. He agreed with the beneficiaries' attorney at the time that the distribution of the decedent's personal belongings would be handled between the beneficiaries. Under these circumstances, he felt he had discharged his duty by entrusting the items to the control of the ultimate beneficiaries. Appellee's approach was ultimately justified as shown by Exhibit A in which counsel for the beneficiaries advised appellee that the dispute over the personal property had been resolved, except for the Honda. The enforcement of that agreement would appear to be a private matter between the appellant and his sister especially since appellee as executor was not a party to their agreement. The assets in question were delivered to the respective beneficiaries as they ultimately agreed.
There was no evidence before the court as to the terms of the final agreement for the distribution between the brother and sister. No conclusion can be reached as to whether Mrs. Romell improperly took and kept any specific items as alleged. The appellant himself admitted he took items from the residence including, on at least one occasion, using a van to carry off the items.
Finally, appellant has failed to establish the monetary value of his alleged loss. Although he testified he did not receive: a family portrait, a cane seat chair, a blue glass bottle, a clock and barometer set, and his own tools, no dollar values were given for these items.
Regarding the appellee's failure to maintain the Center Road property and subsequent sale to a third party in spite of the alleged contract he had with the appellant, we addressed these issues above and found no merit to them. The appellant never asserted in his motion for surcharge damages to the Center Road property caused by the appellee's negligence. Also, any damages incurred as a result of an alleged breach of contract is to be decided by the general division of the court of common pleas.
Assignment of Error of VI is overruled.
Judgment affirmed.
It is ordered that appellee recover of appellant his costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Court of Common Pleas, Probate Court Division, to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
KARPINSKI, J., and
PATTON, J., CONCUR.
 _______________________ JAMES M. PORTER ADMINISTRATIVE JUDGE