JOURNAL ENTRY AND OPINION
Defendant William Bailey Construction, Inc. (hereafter referred to as "Bailey") appeals from the judgment rendered in favor of plaintiffs Donald and Margaret Kishmarton in their action for breach of a construction contract and other causes of action. For the reasons set forth below, we modify the judgment of the trial court and, as modified, we affirm.
On August 8, 1996, plaintiffs filed this action against Bailey, alleging that the residence which Bailey constructed for them has numerous leaks and that snow enters the premises through the air vents. Plaintiffs asserted that defendant breached the terms of the written construction contract, breached its implied warranty and duty to provide workmanlike construction service by building the home in a negligent manner, and breached its express warranty of workmanlike construction. Defendant denied liability and the matter proceeded to a jury trial on June 22, 1998.
For plaintiffs' case, Donald Kishmarton testified that in July 1991, he and Bailey entered into a construction purchase agreement with Bailey whereby Bailey agreed to construct the dwelling for $213,000 (plus any extras). This agreement provided that all "work done under the contract shall be done in a workmanlike manner."
Kishmarton testified that the roof at his previous residence had leaked and the problems were corrected after "ice guard," or a protective barrier which is installed directly over the roof boards, was installed. He also stated that in a discussion with either Dan or Bill Bailey at the time of construction, he requested installation of ice guard at his expense but Bailey indicated that, based upon his experience with other houses in the area, ice guard was not necessary.
The Kishmartons moved into the home in May 1992. In the winter of 1992-1993, Kishmarton observed water streaming down the inside wall of the garage. Bailey examined the problem and determined that it was caused by ice backup. He then had a new gutter installed in the corner above the roof between the garage gutter and the front porch gutter.
Kishmarton further testified that there were leaks from every ceiling and almost every wall of the house. After one snowfall, Kishmarton observed piles of snow in the crawlspace and removed approximately ninety pounds of snow from this area. Kishmarton reported the problems to Bailey and Bailey indicated that the problems were the result of the orientation of the house and wind patterns, and that he could not remedy them.
Leakage continued over the next winter. Kishmarton again reported the problem to Bailey who stated that the warranty for the home had expired. Kishmarton threatened litigation and Bailey threatened to destroy him. Kishmarton undertook to repair some of the damaged areas. He spoke to Bailey again, eventually obtaining the name of Bailey's roofing contractor in order to contact the roofer directly. This contractor, Otto Roofing, later informed Kishmarton that he had remedied the problem by replacing some nails and caulking.
Additional gutters were also installed, but the roof continued to leak and water continued to stream in through the garage. So much water had entered the home that it had pooled beneath the subflooring and warped the oak floor in the diningroom. Kishmarton authenticated numerous photographs which depicted water damage throughout the house and around light fixtures. Finally, Kishmarton testified that he worries each time it snows and he cannot leave his home for extended periods during the winter.
On cross-examination, Kishmarton admitted that in January 1992. or six months after the parties executed the construction purchase agreement and after Bailey had received payment, the Kishmartons signed a Limited Home Warranty Agreement. The attic ventilation provision of this agreement provides in relevant part as follows:
 Leaks may appear due to snow or rain being driven through attic louvers or vents. It is advisable to check your attic after a severe storm and remove or mop up any snow or water. This is considered a homeowner maintenance item, and not the responsibility of the builder. These vents and/or louvers have been provided to properly ventilate your house. Do not close off, block, or obstruct louvers to prevent them from functioning.
Mary Kishmarton testified that each time it snows, her husband, who is sixty-nine years old, has to shovel snow off of the back portion of the roof and remove snow from the crawl space.
Roger Reeves, a certified master roofer, testified that he examined the roof on November 26, 1996. He observed that snow had come into the attic through the roofing vents. The vents were properly installed but snow was blowing up through the holes in the sides of the vents. In addition, the vents had become elevated, allowing snow to accumulate underneath. Reeves stated that new vents with louvered sides were needed and that the vents should have been changed after leaking first occurred.
Reeves stated that most of the problems were caused by ice backup, or an accumulation of snow and ice in the gable above the front door. Reeves testified that this area needed ice guard, or a protective barrier which prevents leaks from any puddling which may occur. According to Reeves, if ice guard had been installed, leaking would not have occurred. He also stated that ice guard should be installed upon request.
Reeves was unsure, however, whether ice guard was required pursuant to the building code, and did not claim that it is needed in every instance.
Proceeding to defendant's case, James Blondin, a building inspector for the City of North Royalton, testified that the plans for the house met the requirements of the North Royalton Building Code. Ice guard, or additional sheeting material near the soffit area, is not required. He testified that it is not normal for ninety pounds of snow to enter through the vent during a snowfall, however.
William Bailey testified that Kishmarton did ask him about installing an ice guard but did so after the roof was approximately eighty percent finished. Bailey then told Kishmarton that he does not normally install it and that it would not be necessary. Bailey further stated that in February 1993, or approximately one year after plaintiffs took possession of the house, the Kishmartons reported that there was a roof leak. He immediately examined the problem and determined that a gutter should be installed in the area above the garage. Approximately one month later, Mr. Kishmarton reported that snow had blown in through the roof vents. Bailey went to the house and observed a cone shaped pile of snow beneath each vent. He decided to wait to determine whether this problem was the unique result of a particularly harsh snowstorm. Bailey returned to the home approximately one week later, during a rainstorm, and observed that the attic was dry.
Bailey further testified that the following summer, Mr. Kishmarton confronted him at a new development which he was working on in Middleburg Heights, and threatened litigation. Bailey denied threatening to "break" the Kishmartons financially. Bailey did not hear from the Kishmartons again until this lawsuit was filed and was never made aware of any problem involving ice backup.
On cross-examination, Bailey admitted that ice backup should not be a constant problem in a home. He also admitted that snow may enter a home through the roofing vents during an extremely severe snowstorm but should not be a constant problem and should not be expected in a mild winter.
Daniel Bailey, the Chief Executive Officer of Bailey Construction, Incorporated, stated that the Kishmartons did not request the installation of an ice guard in any of the written change orders prepared for the residence. He also denied that the Kishmartons had continued to complain about roof leakage subsequent to William Bailey's observation of snow in the attic following the harsh storm of 1993. After plaintiffs filed their complaint, he went to the residence with plaintiffs' counsel. Dan Bailey also testified that there have been no reports of leaks after various rainstorms and snowstorms.
The jury was instructed as to breach of contract, and breach of implied duty to construct in a workmanlike manner and consistent with the work customarily done by others in the same trade, in the same community, for the same type of work. (Tr. 286-289). The jury returned a verdict for plaintiffs and awarded them a total of $24,000 in damages. The jury awarded plaintiffs $5,000 for the reasonable restoration of the property and $19,000 for "loss of enjoyment of the residence, annoyance and discomfort." Defendant now appeals and assigns four errors for our review.
Defendant's first assignment of error states:
 THE TRIAL COURT ERRED BY NOT GRANTING DEFENDANTS' MOTION FOR A DIRECTED VERDICT BASED ON THE EXPRESS WARRANTY OF THE CONTRACT.
Within this assignment of error, defendant asserts that the trial court erred in refusing to direct a verdict for defendant on plaintiffs' claim for failure to construct the roof in a workmanlike manner. Defendant maintains that plaintiffs' claims were precluded by the Limited Warranty.
Civ.R. 50(A) governs the granting of a motion for a directed verdict and provides in pertinent part as follows:
 "(4) When granted on the evidence. When a motion for a directed verdict has been properly made, and the trial court, after construing the evidence most strongly in favor of the party against whom the motion is directed, finds that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party, the court shall sustain the motion and direct a verdict for the moving party as to that issue."
A motion for directed verdict requires the trial judge to construe the evidence most strongly in favor of the party against whom the motion is directed. The motion should be sustained only if reasonable minds can come to but one conclusion, and the conclusion is adverse to the nonmoving party. Wise v. Timmons
(1992), 64 Ohio St.3d 113, 116. Where reasonable minds may reach differing conclusions, the motion must be denied. Ramage v. Cent.Ohio Emergency Serv., Inc. (1992), 64 Ohio St.3d 97, 109.
In this matter, the Kishmartons alleged in their complaint that defendant breached express and implied duties to construct the house in a workmanlike manner.
As to the assertion that defendant breached its express or contractual duty of workmanlike construction, we note that in this matter, the parties executed the purchase agreement in July 1991 and this document obligated defendant to build the home in a workmanlike manner.
Six months later, after defendant received payment for the house, defendant presented plaintiff with the Limited Warranty, with its key provision designating the removal of snow from the attic after severe storms as homeowner maintenance.
In Citizens Federal Bank, F.S.B. v. Brickler (1996), 114 Ohio App.3d 401,408, the court stated:
 Subsequent to the execution of a written contract, it is competent for the parties, by a new contract, although not in writing, either to abandon, waive, or annul, the prior contract, or vary, or qualify the terms of it, in any manner. * * * But where a written contract is thus either totally abandoned and annulled, or simply altered or modified in some of its terms, it is done, and can only be done, by a distinct and substantive contract between the parties, founded on some valid consideration." (Emphasis sic.) Thurston v. Ludwig (1856), 6 Ohio St. 1, 5.
In this instance, there was no evidence of any additional consideration to support any purported modification of the contractual duty of workmanlike construction.
In any event, plaintiffs also alleged in their complaint that defendant breached implied duties to construct the house in a workmanlike manner. That is, the plaintiffs also asserted an action sounding in tort, not in contract. Kirk v. Jim WalkerHomes, Inc. (1987), 41 Ohio App.3d 128, 129-130.
In accordance with the foregoing, reasonable minds could reach different conclusions as to whether defendant was liable on plaintiffs' claims for failing to build the house in a workmanlike manner. The trial court correctly denied the motion for judgment notwithstanding the verdict as to these claims.
Defendant's second assignment of error states:
 THE TRIAL COURT ERRED BY INCORRECTLY INSTRUCTING THE JURY ON THE MEASURE OF DAMAGES IN A BREACH OF CONSTRUCTION CONTRACT CASE AND, MORE SPECIFICALLY, BY ALLOWING THE JURY TO CONSIDER LOSS OF ENJOYMENT OF THEIR RESIDENCE, ANNOYANCE AND DISCOMFORT AS AN ELEMENT OF DAMAGES.
Defendant next maintains that the trial court erroneously instructed the jury that it could render the damage award with regard to any loss of enjoyment of the residence, annoyance, and discomfort. Defendant objected to the instructions insofar as they included "anything which relates to damages that is not directly related to cost of repair." (Tr. 294).
As we noted previously, plaintiffs asserted that defendant breached express and implied warranties of workmanlike construction and the jury was instructed as to both breach of contract and breach of implied duty to construct in a workmanlike manner and consistent with the work customarily done by others in the same trade, in the same community, for the same type of work. (Tr. 286-289). Thus, the jury was clearly instructed on the claim that defendant had failed to construct the home in a workmanlike manner, a tort action. See Velotta v. Leo Petronzio Landscaping,Inc. (1982), 69 Ohio St.2d 376, paragraph one of the syllabus.
This assignment of error therefore involves a close examination of whether plaintiffs may properly assert a claim for breach of implied duty to construct in a workmanlike manner (in tort) and the nature of the damages where there has been a breach of this duty.
In Vanderschrier v. Aaron (1957), 103 Ohio App. 340, 342, this court stated as follows:
 sufficient credible evidence established the fact that the house, when sold, was still in the course of construction and incomplete; and the bargain implied in law between the sellers and the buyers was the completion of the entire house in such a way that it would be reasonably fit for its intended use, and that the work would be done in a reasonably efficient and workmanlike manner.
Later, in Mitchem v. Johnson (1966), 7 Ohio St.2d 66, 73, the Supreme Court stated:
 When the purchase price was paid and the title transferred to plaintiffs, the structure was not complete, and defendant agreed to finish the house as a part of the transaction.
 In the Vanderschrier case, (Vanderschrier v. Aaron), 103 Ohio App. 340, 140 N.E.2d 819, at best, a `bargain' was implied that work to be completed on real estate `would be done in a reasonably efficient and workmanlike manner,' notwithstanding that the promise to complete was part of an executed contract of sale for the purchase of the realty. The implied `bargain' was held to extend beyond, and not to be extinguished by, the payment of the purchase price and the transfer of title. See also, annotation, 84 A.L.R. 1008, and the cases cited therein.
 * * * The requirement of workmanlike performance is no more than that which the law imposes upon the builder of a structure on land owned by another, unless, of course, a higher duty may be fairly implied from the terms of the contract itself. 17A C.J.S. Contracts s 515, p. 851.
 In Flannery v. St. Louis Architectural Iron Co., 194 Mo.App. 555, 558, 185 S.W. 760, 761, we are of the opinion that the law is correctly stated:
 It is the duty of the builder to perform his work in a workmanlike manner; that is, the work should be done as a skilled workman would do it; the law exacting from a builder ordinary care and skill only.' 6 Cyc. 59.
 * * * we do concur in the statement that `it is an implied term of the sale that the builder will complete the house in such a way that * * * the work (both before and after the sale) would be done in a * * * workmanlike manner.'" (Emphasis added.)
In Velotta v. Leo Petronzio Landscaping, Inc. (1982), 69 Ohio St.2d 376,378-379, the Supreme Court stated that:
 The obligation to perform in a workmanlike manner using ordinary care may arise from or out of contract, i.e., from the purchase agreement, but the cause of action is not based on contract; rather it is based on a duty imposed by law."
However, the Velotta Court held in the syllabus as follows:
 1. An action by a vendee against the builder-vendor of a completed residence for damages proximately caused by failure to construct in a workmanlike manner using ordinary care — a duty imposed by law — is an action in tort to which the four-year statute of limitations set forth in R.C. 2305.09(D) applies. (Emphasis in original).
In addition, the Court expressly noted in footnote 2 that it expressed no opinion as to whether a different result would be reached if the matter involved the future construction of a residence or the completion of a partially constructed residence.
Other appellate courts have subsequently considered extendingVelotta to these situations. In Elizabeth Gamble Deaconess HomeAssn. v. Turner Constr. Co. (1984), 14 Ohio App.3d 281, the court indicated that breach of an implied warranty of construction in a workmanlike manner is an action ex delicto under the logical extension of Velotta. That matter involved the future construction of a parking garage. In Kirk v. Jim Walter Homes,Inc. (1987), 41 Ohio App.3d 128, 130, the court extended Velotta
and the implied (tort) warranty of workmanlike construction to the construction of "the shell of a residence," i.e., a partial construction project. See, also, Morton Buildings, Inc. v. Dodds
(Nov. 16, 1992), Madison App. No. CA92-02-003, unreported (implied duty of workmanlike construction in matter involving future construction); Saylor v. Hageman (Dec. 19, 1988), Clermont App. No. CA88-01-066, unreported (agreement regarding roof repairs, the court stated that "Even if such obligation to perform in a workmanlike manner is provided for by contract, the cause of action is not based on contract but is a duty imposed by law.")
In accordance with all of the foregoing, a majority of this court holds that an implied warranty of workmanlike construction, arising in tort, applies where the parties have entered into an agreement for the future construction of a residence.
A majority of this court also concludes that the damages challenged herein, $19,000 for "loss of enjoyment of the residence, annoyance and discomfort," are therefore recoverable pursuant to tort law.
In Horrisberger v. Mohlmaster (1995), 102 Ohio App.3d 494, 501, the court stated:
 For a temporary injury to real property, a plaintiff is entitled to recover (1) reasonable restoration costs, Reeser v. Weaver Bros., Inc. (1992), 78 Ohio App.3d 681, 691-692, 605 N.E.2d 1271, 1278-1279; (2) compensation for the loss of the use of the property between the time of the injury and the restoration, Henderson v. Spring Run Allotment (1994), 99 Ohio App.3d 633, 651 N.E.2d 489; and (3) damages for personal annoyance and discomfort if the plaintiff is an occupant of the property, Reeser at 692-694, 605 N.E.2d at 1278-1280. See, also, 4 Restatement of the Law 2d, Torts (1979) 544, Section 929. Each of these elements of recovery represents a separate and distinct type of damage, and the absence of one does not preclude recovery for the others. See Henderson at 641, 651 N.E.2d at 495; citing Norwood v. Sheen (1933), 126 Ohio St. 482, 493-495, 186 N.E. 102, 106-107.
In accordance with the foregoing, a majority of this court concludes that the trial court's instructions as to damages were not erroneous in this instance.
Due to the concerns raised by Judge Porter in his thoroughly researched dissent, however, and due to the absence of a directive from the Supreme Court, the panel hearing this matter hereby certifies this portion of the appeal to the Supreme Court for further consideration.
Defendant's third assignment of error states:
 THE JURY VERDICT OF $5,000 FOR COST OF RESTORATION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
Defendant also contends that since plaintiffs' expert testified that the cost of restoration of the roof is $3,725, the award of $5,000 for the cost of restoration is erroneous.
An appellate court will not reverse judgments supported by competent, credible evidence going to all essential elements of a case. Seasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77, 80.
In this instance, defendant correctly notes that plaintiffs' evidence demonstrated that the cost of restoration of the roof was $3,725. There was no evidence to support the conclusion that $5,000 is needed to restore the roof. Accordingly, this assignment of error is well taken and the judgment of the trial court is hereby modified to reflect the award of $3,725 as damages for restoration and not $5,000.
Defendant's fourth assignment of error states:
 THE TRIAL COURT ERRED TO THE PREJUDICE OF THE DEFENDANTS BY ALLOWING ROGER REEVES TO TESTIFY AS AN EXPERT WHERE NO REPORT EXPRESSING HIS OPINION HAD BEEN GIVEN TO DEFENDANTS PRIOR TO TRIAL.
Finally, Bailey asserts that the trial court abused its discretion in permitting Roger Reeves to testify since Reeves did not submit an expert report prior to trial.
Loc.R. 21.1 of the Cuyahoga County Common Pleas Court provides:
 (A) Since Ohio Civil Rule 16 authorizes the Court to require counsel to exchange the reports of the medical and expert witnesses expected to be called by each party, each counsel shall exchange with all other counsel written reports of medical and expert witnesses he expects to testify in advance of the trial. The parties shall submit expert reports in accordance with the time schedule established at the case management conference. The party with the burden of proof as to a particular issue shall be required to first submit expert reports as to that issue. Thereafter, the responding party shall submit opposing experts reports within the schedule established at the case management conference. Upon good cause shown, the Court may grant the parties additional time within which to submit expert reports.
 (B) A party may not call an expert witness to testify unless a written report has been produced from said witness and provided to opposing counsel. It is counsel's responsibility to take reasonable measures, including the procurement of supplemental reports, to insure that each report adequately sets forth the expert's opinion. However, unless good cause is shown, all supplemental reports shall be supplied no later than 30 days prior to trial. The report of the expert must reflect his opinions as to each issue on which the expert will testify. An expert will not be permitted to testify or provide opinions on issues not raised in his report.
Trial courts have discretion to determine whether parties are in compliance with Loc.R. 21.1 and their orders will not be reversed absent an affirmative showing of an abuse of discretion.Pang v. Minch (1990), 53 Ohio St.3d 186, paragraph one of the syllabus; Furcello v. Klammer (1980), 67 Ohio App.2d 156, 158.
In Reese v. Euclid Cleaning Contractors (1995), 103 Ohio App.3d 141,147, this court stated:
 The primary purpose of Loc.R. 21 is to avoid prejudicial surprise resulting from noncompliance with the report requirement. * * * Where there is no showing of prejudice, an appellate court will affirm the denial of a motion in limine based upon failure to comply with Loc.R. 21.
In this instance, plaintiffs presented defendant with a "Proposal"[1] prepared by Reeves Roofing which listed the cost of replacing the roof vents, removing shingles, and installing ice guard and new shingles. It is beyond dispute that the entire pre-and post-litigation history of this matter focused upon the fact that snow had entered the attic through the roof vents and focused upon whether ice guard was requested and/or necessary. Further, at trial, Reeves testified that the existing roof vents allowed snow to enter and that ice guard should be installed. Under the circumstances, there was no surprise and no prejudice to defendant. We conclude that the trial court did not err in allowing his testimony. This assignment of error is overruled.
The judgment of the trial court is modified and, as modified, is affirmed.
It is ordered that appellees recover of appellants their costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
JUDGMENT: MODIFIED AND, AS MODIFIED, AFFIRMED.
O'DONNELL. J. concurs, PORTER. A.J. concurs in part anddissents in part (see attached concurring and dissentingopinion).
_______________________ ANN DYKE JUDGE
[1] We note that the tools of trade of professional roofers do not easily lend themselves to the preparation of detailed written reports.
 CONCURRING AND DISSENTING OPINION